## Case No. 14,175.

### The TRIMOUNTAIN.

[5 Ben. 246.] [1]

District Court, E. D. New York. June. 1871.

ADMIRALTY—SURPLUS AND REMNANTS—STEVEDORE—COOPERING CARGO — MASTER'S WAGES AND DISBURSEMENTS — MORTGAGEE — BANKRUPTCY — GOLD CONTRACT.

1. Surplus and remnants of a ship, were claimed by an assignee in bankruptcy. Petitions were also filed on behalf of a stevedore, who had discharged the cargo of the ship on her last voyage, and on previous voyages; of a cooper who had put the last cargo in landing order previous to its delivery; also by the master of the vessel for his wages and for disbursements; and by a watchman for watching the vessel in port, both before and after her seizure by the marshal under the process. *Held*, that the claims of the stevedore and cooper for services rendered, in reference to the cargo on the last voyage only, and of the master for wages and disbursements during the

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

last voyage only, should be paid out of the surplus.

[Cited in Porter v. The Sea Witch, Case No. 11,289; The Wexford, 7 Fed. 684; The Lillie Laurie. 50 Fed. 221; The Seguranca, 58 Fed. 909.]

2. The expenses of watching the vessel in port, previous to her seizure by the marshal, might also be paid out of it, but not the expenses of watching her after such seizure.

[Cited in The Champion, Case No. 2,584; The Erinagh, 7 Fed. 234; The Seguranca, 58 Fed. 909.]

3. A mortgagee of the ship under a mortgage given to secure "one thousand pounds sterling, lawful money of Great Britain," petitioned also to be paid out of the surplus, the amount due him "in gold coin of the United States." The assignee in bankruptcy claimed, that the amount should be paid in currency. *Held*, that inasmuch as the questions of law involved had been decided by the district court for the Southern district of New York, arising between the same parties, on similar mortgages on two other ships, from which decision no appeal had been taken by the assignee, this court, without passing on the questions of law involved, would consider that that decision was acquiesced in by the assignee, unless it was appealed from, and would make a similar order. But if an appeal was taken from that decision, a decision in this matter would be withheld, until the determination of the questions of law by the appellate court.

In admiralty.

BENEDICT, District Judge. This is a motion for an order of distribution of the proceeds of the ship Trimountain, a vessel which has been condemned and sold to pay certain liens attaching to her. The proceeds in the registry are more than sufficient to discharge all the decrees which have been rendered against the vessel, and the only controversy is in respect to the distribution of the surplus remaining after payment of the decrees. No owner has appeared to make any demand for this surplus, but several parties, who have performed certain services in connection with the vessel, have presented petitions, asking that their demands may be directed to be paid out of the surplus in the registry.

A petitioner holding an unsatisfied mortgage, has filed a like application for payment of his mortgage, and there is also the petition of John Sedgwick, Esq., assignee in bankruptcy of the owner of the vessel, who has appeared by petition, and asks that the surplus proceeds may be paid over to him, for distribution among all the creditors of the owner, in accordance with the provisions of the bankruptcy act [of 1867 (14 Stat. 517)], and who opposes the payment of the demands of the petitioners. Proofs have been taken in support of the various petitions, and they are now to be disposed of by the court.

I am of the opinion, that the demands arising out of labor of coopers performed on board the vessel, at the termination of the last voyage, in order to put the cargo in landing order, and enable the ship to deliver her cargo, and earn her freight, may be paid out of the surplus proceeds of the vessel, and that the demand of the stevedore for labor per-

formed in landing the same cargo may also be in like manner paid.

I do not rest this determination upon the grounds of the decision in the case of The Stephen Allen [Case No. 13,361], where the owner of the ship, who was admitted to be liable in personam, for the demand, was the only opposing party making claim to the fund; because here the opposing party who makes claim to the fund is the assignee in bankruptcy of the owner. The assignee in bankruptcy represents all the creditors of the owner, and against him no demand can be paid out of the fund, unless upon the ground that the fund is, in equity, subject to a charge, an equitable lien for such demand. But this fund is surplus proceeds of a ship sold shortly after her arrival in port. When she arrived, she was loaded with a cargo which she was bound to deliver. If not enabled to deliver her cargo, she would have been subjected to a maritime lien for damages, and she would have been unable to collect her freight. The usual and ordinary expenditures, made to enable her to free herself from liability on her existing contract of affreightment, and to enable her to collect her freight, should in equity be paid out of a fund, which, if such expenditures had not been made, would have been thereby largely diminished. It cannot be doubted, that if the assignee in bankruptcy had come into possession of the vessel with this cargo on board, he would have been directed by the court to make this very expenditure out of the general proceeds of the bankrupt's estate, in order to bring into that estate the ship, free from any liability for the cargo. If these bills would properly be paid by the assignee under such circumstances. I see no reason why he should now be permitted to object to them.

Again, I think, it might be fairly inferred from the evidence, that the freight of this cargo, which the ship was enabled to earn partly by means of the labor which these demands represent, came into the hands of the assignee in bankruptcy with the rest of the estate, and this freight money would, I think, be clearly subject in equity to a charge for money expended to secure it. If the assignee in bankruptcy, who has received the freight so chargeable, declines to pay charges upon it of this nature, a court of admiralty may well refuse to grant his petition to be paid a surplus in its registry, until he shall do equity in respect to such demands.

The reasons I have assigned for charging this fund with demands for labor performed in and about the completion of the last voyage of this ship, fail in respect to demands of a similar character incurred on former voyages. Time relieved the ship from any possibility of liability by reason of those voyages, and no freight of those voyages has come into the hands of the assignee. The order will therefore be that the petitioner James H. Yeaton, be paid the sum of $154.93, out of the fund in court, and that the peti-

tioners Johnson & Giles, be paid in like manner the sum of $115.25.

The demand of Charles Manent, for services as watchman on board the vessel, after she was taken in actual custody by the marshal, cannot be allowed out of the fund. The necessary watchman's fees for that period, disbursed by the marshal, form part of the marshal's bill of costs. But wages earned in watching the vessel in port, up to the time of her seizure by the marshal, may be paid out of the fund. Such services, being rendered for the benefit of all interested in the ship, create a lien upon the ship. They constituted one of the privileged demands of the maritime law as administered under the ordinance, and are so ranked in the Code de Commerce.

The demand of the master for wages and disbursements is not sufficiently proved to enable me to pass upon it. He is entitled upon the principles above stated, to be paid any wages earned, or necessary ship's disbursements made during the last voyage, but not for services and disbursements made during any former voyage, and he has liberty to present any further evidence he may desire, to show that he has any demand which will come within the rule above laid down.

There remains, undisposed of, a question arising upon the petition of the mortgagee. This petition prays, that, out of the moneys in court, which consist of certain legal tender notes received upon the sale of the vessel, under a decree in rem, rendered in a former case, he be paid one thousand pounds sterling, with interest from June, 1870, in satisfaction of a mortgage upon this vessel, which was given to secure the payment in New York of "one thousand pounds sterling, lawful money of Great Britain," the lien of the mortgage having been transferred to this fund. Upon this petition, the petitioner now asks for an order, directing the payment of the amount due him "in gold coin of the United States." I have examined, to a certain extent, the questions of law which this petition raises, and cannot consider them free from difficulty. It does not appear to me clear that the contract of the parties can be considered to be a contract to pay in the gold coin of the United States.

I also think that it may well be doubted whether, in a case where the only fund in court is currency of the United States, a party petitioning for payment out of that fund can demand gold coin of the United States, a currency different from that of which the fund consists. But I do not think, that I can be called on at the present time to decide these and the other questions which have been argued before me upon this petition, for the following reason.

Precisely the same questions, arising between the same parties, upon exactly similar mortgages made upon two other ships of the same line, have just been decided by Judge Blatchford, in the Southern district of New York, where the other vessels were proceeded

against. These questions were there raised by the same assignee in bankruptcy, and it does not yet appear, whether he does or does not intend to seek a review of that decision in the circuit court. If that decision be acquiesced in, and no appeal be taken, I shall feel justified in making an order in this case similar to the one made by Judge Blatchford. The omission to take an appeal, by the assignee, should be held by this court to be an acquiescence, on his part, in the law declared in that case. If an appeal be taken, I shall withhold my decision here until the questions at issue by these parties shall be determined by the proper appellate tribunal upon that appeal. I therefore make no order at present, in respect to the mortgage, but as the fund is sufficient to pay all the other demands, and still sufficient to satisfy the mortgage. even if the same is finally declared payable in gold coin of the United States, the other demands which I have above examined, may be now paid.