DANIEL DALSTROM and others *v.* THE OUTFIT OF THE SCHOONER
"E. M. DAVIDSON."

(*District Court, E. D. Wisconsin.* January term, 1880.)

WAGES—SALVAGE—CONFLICTING CLAIMS.—Under the circumstances of
this case it was *held* that the wages earned by seamen after their vessel
had been wrecked, but before she was finally abandoned, did not con-
stitute antecedent wages in a sense which would postpone them to the
claims of the salvors, and that the proceeds derived from the sale of the
outfit of the vessel must first be applied to the payment of the demands
of such seamen.

In admiralty.

The facts of this case, as shown by the pleadings, were these:
On the fifteenth day of October, 1879, the schooner Davidson
left Chicago on a voyage to northern ports on Lake Michigan.
Libellants shipped on board as seamen. On the next day the
vessel was stranded on Pilot Island Reef. On request for assis-
tance from the master, Wolf & Davidson, of Milwaukee, dis-
patched the tug Leviathan, with steam-pump and other appa-
ratus, to the relief of the vessel. Efforts were made to get the
vessel off, and were continued until November 26th, but they
were unsuccessful. From the time the vessel was stranded until
exertions to relieve her were abandoned libellants continued
on board. On the twenty-fifth day of November, the master
of the tug being convinced that the vessel could not be re-
lieved, deemed it advisable to save her outfit, consisting of
boats, tackle, rigging, apparel and furniture, and ceased his
efforts in behalf of the vessel. Thereupon the master and
crew of the tug, with the assistance of the crew of the vessel,
removed the vessel's outfit to the tug, and brought it, together
with the master and crew of the vessel, to the port of Milwau-
kee. Libellants were then discharged, but were not paid their
wages, and thereupon libelled the outfit. Decree was ren-
dered in their favor, the outfit sold, and the proceeds were
paid into the registry of the court. Thereupon the owners of
the tug intervened, by petition as salvors, insisting that their
claim for salvage service was privileged to that of the sea-
men, and asked for payment as having the prior right to the

proceeds of sale; and the question was whether, under such a state of facts, the wages of the seamen, or the claim for salvage service, was to be first paid.

*Mr. Markham,* for the seamen, cited *Pitman* v. *Hooper,* 3 Sumner, 50; *The Massasoit,* 1 Sprague, 97; *The Isabella,* Brown's Adm'y Rep. 96–103; *The Sailor Prince,* 1 Benedict, 234; *The Steamboat Pilot No. 2,* 1 Newberry, 215–217; *Smith* v. *Stewart,* Crabbe's Rep. 218; *Lewis* v. *The Elizabeth & Jane,* 1 Ware, 35.

*Mr. Krause,* for salvors, cited *The Salina,* 2 notes of case 18, 16 Monthly Law Reporter, 5; *Reed* v. *Hussey,* 1 Blatch. & How. 527; *Collins* v. *Steamboat Fort Wayne,* 1 Bond, 484.

DYER, J., held that the seamen were not discharged from the obligation of their contract of service by the happening of disaster to the vessel; that it was their duty, so long as their personal safety permitted, to remain by the wreck and to save as much as possible; and that upon compliance with this obligation the fragments of the vessel constituted a fund pledged for payment of their wages; that upon abandonment by them of the wreck the contract between them and the owner of the vessel would be dissolved, and that they would then lose their privilege against the vessel and their claim for wages; that as libellants remained by the wreck and did not abandon it until the outfit was removed, their right to wages and their lien continued in force; that under the circumstances of the case the wages which were earned while they remained on board, and until the vessel was finally abandoned, did not constitute antecedent wages in a sense which would postpone them to the claim of the salvors; and that the proceeds of the outfit must be first applied to the payment of their demands, although it would have been otherwise had they abandoned the wreck before the salvage service was begun.