## THE LILLIE LAURIE.

### (*Circuit Court, E. D. Texas.* November Term, 1880.)

1. ADMIRALTY—PRIORITY OF LIENS.

   Liens for salvage and for damage to goods are inferior to the lien of seamen for wages earned on a subsequent voyage, but, being general maritime liens, are superior to those of mortgagees, whether their mortgages were registered before or after the origin of the maritime liens.

2. SAME.

   Liens for salvage and for damage to goods are superior to a state statutory lien for supplies subsequently furnished in the home port.

3. SAME—APPEALS—IMPROVIDENT PAYMENT.

   A libel for salvage and for damage to goods was dismissed, and decrees were rendered in favor of certain furnishers of supplies in the home port, on a lien created by the state law, each decree being for less than $50, and therefore not subject to appeal. Libelant appealed to the circuit court, and, pending his appeal, the decrees for supplies were paid in full, though the proceeds of the vessel were insufficient to pay both classes of claims. *Held*, that the payment was improvidently made, as the question of priority was carried up by the libelant's appeal.

In Admiralty. Libel for seamen's wages. On appeal from district court.

The original libel was filed by Dennis Mahoney to recover seaman's wages. Several other seamen intervened, and filed similar libels. One E. N. Stevenson also intervened, and filed a libel for damages sustained by the nonperformance by the Laurie of a contract of affreightment and for salvage. Upon this latter libel the facts disclosed by the evidence were as follows: The schooner, in December, 1878, was bound on a voyage from Galveston to Moss' Bluff, on the Trinity river. A part of her cargo consisted of merchandise, valued at more than $1,200, the prop-

erty of the libelant Stevenson. On December 16th, a short distance below her destination on the Trinity river, the schooner, from some cause not explained by the evidence, sank in water 20 or 30 feet deep. Her hull was utterly submerged. The schooner was abandoned by her master, who told Stevenson to undertake to save her as best he could. Stevenson employed a large force of men, and by strenuous exertions raised the schooner, and landed her cargo, which was in a damaged condition. This libel was filed to recover the damage sustained by his goods, which he claimed to be $311, and for salvage, for which he claimed $150. His claims were not immediately put in suit, owing to the negligence of his proctor, in whose charge they had been placed. The schooner resumed her business, and afterwards contracted the debts for seamen's wages, for which Mahoney and others brought their libels. On August 15, 1878, a mortgage on the schooner to one J. F. Magale for $240 had been duly recorded in the customhouse at Galveston, which was her home port, and on June 7, 1879, another mortgage to one B. Dugat for $227 was duly recorded in the same office. These mortgagees also filed intervening libels. Certain furnishers of supplies in the home port, who, by complying with the local law of Texas, had acquired liens on the schooner, also filed intervening libels against her. The supplies for which these latter liens were claimed were all furnished after the sinking of the schooner on December 16, 1878. The schooner was seized upon the libel of Mahoney, and by order of the district court was sold, and her proceeds, amounting to $528, were paid into the registry of the court. The district court made a final decree in the case, dismissing the intervening libel of Stevenson for damages and salvage for want of evidence to sustain it, and decreed in favor of the seamen who sued for wages, the mortgagees, and the furnishers of supplies in the home port, who had acquired liens by virtue of the state law, and ordered a distribution of the fund in the registry among those who by its decree were entitled to it. The decrees in favor of the seamen and the furnishers of supplies were, respectively, for less than $50 each. Stevenson appealed to the court from the decree disallowing his claim, and from the decrees in favor of the mortgagees; the fund in the registry not being sufficient to pay him and the mortgagees. Pending the appeal the decrees in favor of the seamen and the furnishers of supplies, amounting in the aggregate to $195.93, were paid in full out of the registry of the district court, leaving, after the payment of the costs, only a balance of $100.37, to be applied to the payment of Stevenson's claims should this court decree in his favor.

*Wharton Branch*, for Stevenson.

*A. N. Mills*, *Geo. W. Davis*, and *Henry Sayles*, for the mortgagees.

Woods, Circuit Judge. The testimony upon the hearing in this court establishes conclusively the claim of Stevenson for salvage and for damage to his goods resulting from the sinking of the Lillie Laurie. The salvage claimed ($150) only covers the actual expenses incurred by Stevenson in raising the schooner, with a very moderate compensation for his own services. The damage to his goods ($311) is also clearly estab-

lished, and there is no evidence to show that the damage fell within any exception made in the bill of lading. There must, therefore, be a decree in favor of Stevenson for both claims, amounting in the aggregate to $461. The sum which the schooner brought when sold by order of the district court, to wit, $528, not being sufficient to pay all the decrees against her, it becomes necessary to settle the order in which the decrees are to be satisfied.

The claims of the seamen were for wages earned upon voyages subsequent to the date of the salvage service rendered by Stevenson and the date of his claim for damage to his goods. They are therefore entitled to priority of payment by reason of that fact. *The Paragon*, 1 Ware, 326; *Surplus of the Ship Trimountain*, 5 Ben. 246; *The Hope*, 1 Asp. 563; *Porter* v. *The Sea Witch*, 3 Woods, 75. It has even been held that seamen's wages are entitled to priority over all other claims. *The Paragon*, *ubi supra*. The seamen are therefore entitled to be paid their claims in full before payment to any other lienholder.

The claims of Stevenson, which are strictly maritime liens, by the general maritime laws are entitled to priority of payment over the claims of mortgagees, whether the same were registered before or after the origin of Stevenson's claims. *Baldwin* v. *The Bradish Johnson*, 3 Woods, 582. And Stevenson is entitled to priority of payment over debts contracted subsequent to the date of his claim for supplies to the schooner furnished in her home port, and which are a lien upon the vessel by virtue of state law only. *Baldwin* v. *The Bradish Johnson*, *ubi supra; The John T. Moore*, 3 Woods, 61.

The order in which the proceeds of the sale of the schooner should be distributed is therefore as follows: *First*, the costs of suit; *second*, the decrees for seamen's wages; and, *third*, the decrees in favor of Stevenson for salvage and for damages to his goods. As the fund in the registry of the court will be insufficient to pay these claims, it is unnecessary to go further.

An interesting question of practice is raised by the fact that the decrees rendered by the district court in favor of the furnishers of supplies in the home port, each decree being for a less sum than $50, and the decrees, therefore, not being subject to appeal, were paid in full out of the registry of the court, pending the appeal of Stevenson. Were these decrees properly paid? It seems to me clear that they were not. The fund in the registry being insufficient to pay the costs, the maritime liens, and the claims of these furnishers of supplies, a controversy necessarily arose between Stevenson and the supply men touching their right to priority of payment. The libel of Stevenson having been dismissed by the district court, his right to priority of payment over the supply men could only be settled in the circuit court, and that question was taken up by his appeal. All that the supply men could insist on was that the amount of their claims should not be disturbed by the circuit court, that having been finally settled by the district court. But, as long as Stevenson was prosecuting his appeal and claiming priority over them in the circuit court, they could not settle that question in their own favor by getting

payment of their claims in full from the registry of the district court. To hold otherwise would be to allow the fund against which an appellant was prosecuting his claim to be entirely withdrawn, and thus deprive him of all the fruits of his appeal and decree should the appellate court decide in his favor. When there is a fund in the district court against which several libelants are prosecuting claims, and it is insufficient to pay all, and the claim of one libelant is disallowed, and he appeals to the circuit court, no payments should be made from the fund until after the decree of the circuit court upon the appeal. By such an appeal the whole decree is brought up. The part not appealed from remains here in full force, to be executed on the final termination of the cause. What is not reversed is still in force and a necessary part of the decree of this court, and is to be executed as such. *The Roarer*, 1 Blatchf. 1. The result of this view is that the entire fund should have been sent up to this court with the appeal. "The appeal carries up the *res*, or money in the registry of the district court, to the circuit court, and, when the rights of the parties are adjudicated there, the court must carry into execution its own decree." *Montgomery* v. *Anderson*, 21 How. 386.