THE GRAPESHOT, etc., and Six Other Cases.

(*District Court, S. D. New York.* October 20, 1884.)

1. MARITIME AND STATUTORY LIENS — REPAIRS AND SUPPLIES — ORDER OF DISTRIBUTION.

Claims for ordinary repairs and supplies, furnished upon running accounts, to a tug running about the harbor of New York, that are contemporaneous, or nearly so, and overlap each other, should be paid *pro rata*, in case of an insufficiency. No distinction will be made between strictly maritime liens for supplies in foreign ports, and statutory liens given for similar supplies in a home port.

2. SAME — DAMAGE CLAIM ON TOWAGE.

The lien for a claim of damage upon a contract of towage, for negligently running a tow aground, charges the vessel as she was at the time she caused the injury; that is, subject to the liens already existing for previous supplies. *Held*, therefore, that a rest should be made in the various running accounts for supplies at the date when the damage lien accrued; and that the claims up to that date were entitled first to be paid in full, as against the damage claim, but without preference among themselves; and that any surplus should

be next applied upon the damage claim, as ascertained, and such surplus, if any, retained in the registry to await the decision of the damage suit.

3. SAME—SUPPLIES FURNISHED PENDENTE LITE. POSTPONED.
   For supplies and repairs furnished in a foreign port, after the arrest of the tug by the marshal of this district and while he permitted her to be navigated, no lien allowed as against prior claims in suit.

4. SAME—LIBEL FOR WAGES—COSTS.
   In a suit for wages, entitled to be first paid in full, under which, also, the vessel was seized and sold, the costs should also be paid in full.

5. SAME—COSTS IN OTHER CASES.
   The costs upon all the other necessary libels directed to be taxed and added to the respective claims, and paid with them *pro rata*.

In Admiralty.

*Alexander & Ash*, for Coffey and others.

*Owen & Gray*, for Coffin and others.

*Thomas M. F. Randolph*, for Communipaw Coal Co.

BROWN, J. The tug-boat Grapeshot, having been libeled upon various claims for wages, for repairs and supplies, and for damages, has been sold, and the net proceeds, amounting to $1,058, have been paid into the registry of the court. She was first seized under a libel filed by James Coffey and others for wages. Four other libels, filed shortly afterwards, were all for repairs and supplies furnished to the tug, each consisting of various items furnished at different times. They all overlap one another, and cover a period extending from about March 1 to July 16, 1884. The libel of Richard Coffin was filed to recover damages sustained by the schooner Velma, which was in tow of the Grapeshot, and is alleged to have been run aground on July 5, 1884, through the negligence of the tug. This was the earliest libel filed, though not the first under which the Grapeshot was arrested. The liability of the tug for these damages is denied, and the suit has not yet been brought to trial. In all the other cases judgments have been recovered. The last libel filed was for coal supplied by the Communipaw Coal Company to the amount of $34.38, between July 18 and July 22, 1884, after the arrest of the vessel by the marshal, and while she was in his custody and was apparently permitted by him to be run by the owners. The amount in the registry being insufficient to pay all the various claims, the parties have submitted to the court the question of their respective priorities, as well as their right to costs.

I do not find upon the facts any such laches in regard to any of the claims as should debar them from their proper order of privilege. The claims for wages must, therefore, be paid in full, and the proctors in that case should be allowed one full bill of costs, as the vessel was seized and sold in their suit. *The Samuel J. Christian,* 16 FED. REP. 796; *The J. W. Tucker,* 20 FED. REP. 134.

The lien claimed by the Communipaw Coal Company for coal supplied to the vessel while she was in the lawful custody of the marshal must be postponed to all other claims. The company had already libeled the vessel for previous supplies to a considerable amount. It

cannot be allowed that the claims of libelants shall be prejudiced by any supplies subsequently furnished while the vessel is legally in the custody of the court, through the possession of the marshal, in consequence of any consent that he may have given to her further navigation. *The Aline*, 1 Wm. Rob. 112, 122.

The four other libels for repairs and supplies embrace, as I have said, numerous items extending over a period of about four months, and overlapping one another. They are, each of them, brought upon running bills of account with the steam-tug, which was employed entirely about the harbor in making short trips daily, or several trips a day. It is impracticable to regard each of such trips by this tug as a separate voyage, or to base any priorities upon the order of such trips. It would be almost equally impracticable to adjust the priorities of these various overlapping items of supplies in the inverse order of their dates; and such a mode of distribution, if practicable, can hardly be supposed to accord with the intention or the expectation, as to security, of those who furnished the supplies upon such running bills of account. I am satisfied that, in these cases of harbor navigation, where the accounts are of the same rank, and are partly contemporaneous and overlapping, or, if not overlapping, are nearly contemporaneous, and consist of only the ordinary repairs and supplies incident to the usual course of navigation, the rule most equitable in itself, and that which will effectuate most nearly the understanding and expectation of the various parties that furnish such supplies, will be that of a *pro rata* distribution, as in the cases referred to in *The J. W. Tucker*, 20 Fed. Rep. 134. The divisions of time cannot, indeed, here be made by open seasons of navigation, because navigation here is open the year round. But I think the same considerations there stated apply equally within the period of a reasonable diligence for the enforcement of the earliest of the liens presented. Those which exceed that period should be postponed; those that do not should share *pro rata*. Where the repairs are of an extraordinary or exceptional character, such as might be consequent upon extensive damage by collision, for instance, they might not, perhaps, be properly brought under this *pro rata* distribution. At present, I decide only as to ordinary repairs and supplies.

The damage claim in the suit of Richard Coffin arose out of a contract of towage. If the libelants substantiate their claim, inasmuch as their libel was filed very shortly after the injury to the Velma, and no laches are imputable to them, they would seem to be entitled to the benefit of the security of the vessel for the performance of her maritime obligation according to the condition in which she stood at the time when the towage services were undertaken by her, and contracted for by the libelants, namely, on the fifth day of July; *i. e.*, subject to all liens on her then existing, and to none subsequently arising. Upon the principle of the decision of the recent case of *The Frank G. Fowler*, 17 Fed. Rep. 653, and that of *The Samuel J. Chris*

*tian, ut supra,* it would seem that the lien and security of the owners of the Velma could not be supplanted by that of the subsequent material-men. The principle of *The Aline,* 1 Wm. Rob. 111, is not applicable to the Velma, since her relation to the Grapeshot is not wholly involuntary, as in cases of torts by collision. Here the Velma voluntarily contracted for the services of the Grapeshot, and she can justly claim no security beyond her situation as she then was. A rest should therefore be made in the bills up to July 5th, and such items as were furnished after that date must be postponed to the damage claim as the same may be hereafter established.

The claims for wages, with the costs of that suit, should, therefore, be first paid in full. Upon the other claims of the same rank, the costs of all necessary libels are to be added to the claims, respectively, and each claim up to July 5th, with its costs, is to be paid *pro rata,* except the claim of the Communipaw Coal Company for $34.38. If, after the above payments, there shall be any residue, it must remain in the registry and be applied upon whatever is recovered in the suit of the Velma, in preference to the claims for supplies furnished after the damage.