THE G. F. BROWN.

NEW JERSEY DRY DOCK & TRANSP. CO. *v.* THE G. F. BROWN.

LORD *v.* SAME.

L'HOMMEDIEU *v.* SAME.

HARTFORD & NEW YORK TRANSP. CO. *v.* SAME.

PALMER and another *v.* SAME.

*(District Court, D. Connecticut. March 18, 1885.)*

MARITIME LIENS—PRIORITY OF LIENS—DISTRIBUTION OF FUND IN COURT—WAGES
—REPAIRS AND MATERIALS—TOWAGE—SALVAGE.
  *The J. W. Tucker*, 20 FED. REP. 129, *The Grape Shot*, 22 FED. REP. 123, and *The Arctic*, Id. 126, followed as to the priority of the various liens in this case.

In Admiralty.
*Wilcox, Adams & Macklin*, for the Dry Dock Co. and the Hartford & N. Y. Transp. Co.
*N. R. Hart*, for George Lord, Jr.
*Charles Murray*, for L'Hommedieu and Palmer & Duff.

SHIPMAN, J. The proctors in these cases have presented the questions in regard to the apportionment of the fund in court among the lienors upon the facts as they are shown in the libels and the accompanying papers, without any other proofs.

The G. F. Brown appears to have been a small coasting schooner, owned in Connecticut, and making short and frequent trips which could hardly be called voyages. George Lord, Jr., was hired as mate of said vessel for an indefinite time at $25 per month, and on January 7, 1885, there was due to him, as such mate, for two months and 18 days' services previous thereto, the sum of $56.15.

In September, 1884, Palmer & Duff, of Greenwich, Connecticut, furnished, at said Greenwich, materials and repairs upon said vessel,

for which $123.91 are now due, but never, so far as appears from their libel, filed a certificate of lien in any town clerk's office as required by the Connecticut statute in regard to liens upon vessels. Said statute provides as follows: "No such claim" (for materials furnished, or services rendered in the construction or repairs of a vessel) "shall remain a lien on such vessel or its appurtenances more than ten days after the person performing such services, or furnishing such materials, has ceased so to do, unless he shall sign and lodge with the town clerk of the town where such vessel was so constructed or repaired a certificate in writing," describing, among other things, the vessel and the amount claimed as a lien thereon.

On December 6, 1884, while said schooner was lying at Elizabethport, New Jersey, laden with a cargo for Stamford, Connecticut, she was damaged, and was repaired by the Dry Dock & Transportation Company, whose bill for said repairs, wholly unpaid, is $686.87. On December 27, 1884, and as soon as the repairs were finished, she started for Stamford, and, at the request of her captain, was towed by the steam-tug Ceres from Elizabethport to the bay of New York, for which service $20 is due to Samuel L'Hommedieu and another, owners of the tug. She then proceeded to Stamford, where she was libeled on December 29, 1884, by the Dry Dock & Transportation Company. Subsequently she was libeled by the various parties before mentioned, and by the Hartford & New York Transportation Company, which claimed salvage, but which makes no claim to the fund in court. Default having been made upon the return of the first process, the amount due to the libelant was ascertained, and the vessel was sold for $775, a sum less than the debt and costs of the Dry Dock Company. An assigned claim for seaman's wages has also been filed in court.

The questions in the case have been, in substance, the subject of careful consideration by Judge Addison Brown in *The J. W. Tucker*, 20 FED. REP. 129; *The Grapeshot*, 22 FED. REP. 123, and *The Arctic*, Id. 126, and his conclusions, so far as they relate to the facts in the case, are followed.

Let the fund in court be divided as follows: (1) By the payment of the bill of costs, as taxed, of the Dry Dock & Transportation Company. (2) By the payment to George Lord, Jr., of his wages, $56.15, and so much of his costs as are disbursements. (3) The remaining part of the fund should be divided *pro rata* between the Dry Dock & Transportation Company, whose bill amounts to $686.86, and Samuel L'Hommedieu, to whose bill of $20 so much of the costs as are disbursements should be added.

Palmer & Duff have neither a maritime nor a statutory lien, so far as is disclosed by the papers now in the case. *The Albany*, 4 Dill. 439; *The Arctic*, cited *supra*.