## THE ALANSON SUMNER.[1]

*(District Court, N. D. New York. July 31, 1886.)*

1. MARITIME LIEN — PRIVILEGE OF MARINERS AND MATERIAL-MEN CLAIMING UNDER STATE STATUTES.

Seamen are entitled to look to the vessel, or its proceeds, for the payment of their wages, if they have been ready and willing to perform the duties for which they were engaged, notwithstanding the fact that in consequence of the idleness of the vessel the services in question were not actually rendered.

2. SAME — SEAMEN AS MECHANICS.

A seamen performing mechanic's work, before and after the season of navigation, is a mechanic, not a seaman.

3. SAME — LIEN OF MATERIAL-MEN.

The lien of a material-man, claiming under a state statute, is limited to the time therein stated. If the vessel be arrested after the expiration of the term, the libelant acquires no rights thereby.

4. ADMIRALTY — PROCEDURE — AMENDMENT OF LIBEL.

Material-men, claiming as such in their pleadings and proofs, cannot, on final argument, be allowed to amend so as to thereby change the entire nature of their claim, if by so doing the rights of other creditors seeking payment from an inadequate fund would be prejudiced.

In Admiralty. Distribution of fund between adverse claimants.

On the twenty-seventh of July, 1885, George N. Spencer, first mate, Andrew J. Bortel, seaman, Henry T. Couch, seaman, and William H. Bishop, engineer, filed their libel against the steamer Alanson Sumner, claiming as wages the sum of $297, $642, $136.50, and $404.33, respectively. On the fourth of August, 1885, George Gobel and James D. MacFarlane filed a libel for work, labor, and services rendered, and materials furnished, in repairing the vessel at her home port, (Oswego, New York,) amounting to $5,962.58, upon which they have been paid $2,500, leaving a balance due of $3,462.50. On the thirty-first of December, 1884, specifications of the debt were filed in the Oswego county clerk's office, pursuant to the provisions of the lien law of the state of New York. The libelants allege that, by virtue of this proceeding, they acquired, and still retain, a valid lien upon the vessel. Upon the argument, however, this position was virtually abandoned, and it was contended that the claim should, in whole or in part, be upheld as a salvage service. On the fourteenth of August, 1885, the Vulcan Iron-works Company, Charles A. Tanner, and Stephen Lyon, filed a libel alleging that there is due them, respectively, the sum of $977.03, $239.85, and $249.69, for improvements, alterations, and repairs put upon the vessel in her home port during the year 1884. Specifications of the lien were filed in the clerk's office of Oswego county on or about the second of February, 1885. The libelants allege that they thus acquired a lien under the state law for the sum of $977.03, which remained in force until the second of July, 1885. It is alleged that this lien was thereafter continued by reason of an attachment issued

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

out of the supreme court of the state of New York on the first of July, 1885, by virtue of which the sheriff of Oswego county took possession of the vessel, and retained it, with the consent of the owner, until she was seized by the marshal. On the twenty-seventh of July, 1885, Thomas Dobbie filed a libel to recover $121.85 for an alleged salvage service in pumping out the vessel, and helping to raise her after she had taken fire and sunk at her dock, in the harbor of Oswego. On the fifteenth of September, 1885, Mary E. Snow filed a claim and answer to the libel of the Vulcan Iron-works Company, in which she alleges that she is the owner of the vessel by virtue of a conditional bill of sale, or mortgage, executed and delivered to her January 19, 1884, by the then owner, to secure the sum of $12,000 previously loaned by her to him, which sum remains wholly unpaid. The Vulcan Iron-works Company, Tanner, and Lyon interpose an answer to the libel of the seamen above named, and also to the libel of Gobel and MacFarlane. The vessel was heretofore sold upon a decree taken *pro confesso*, and the proceeds, amounting to $3,050, have been paid into the registry of the court. The decrees already entered by default, with the expenses incident thereto, amount, in the aggregate, to about $1,600, leaving $1,450 to be disposed of in these actions.

*W. A. Poucher* and *William Tiffany*, for seamen, and for Gobel and MacFarlane.

*J. A. Hathway*, for the Vulcan Iron-works Company, Tanner, and Lyon.

*B. B. Burt*, for Thomas Dobbie.

*William Tiffany*, for Mary E. Snow.

Coxe, J. The employment of the seamen by the master of the vessel is established by a preponderance of evidence. During the season of navigation, and until the seizure by the marshal, they were at all times ready to perform the duties for which they had been engaged. They should not suffer by reason of the master's failure to find employment for the steamer. Especially is this so when their right to recover is resisted only by those who have not a vestige of interest in the fund. Spencer is entitled to receive $297; Bortel, $350; Couch, $136.50; and Bishop, $313.50. Interest upon these sums should be allowed from July 24, 1885, together with costs and disbursements. The claims of Bortel and Bishop have been disallowed in part. The law does not permit a privilege against the vessel for services which are in no sense maritime, rendered after the close of navigation. A mariner may also be a mechanic; but the fact that he works as a painter, machinist, carpenter, snow-shoveler, or ship-keeper, upon a vessel while she is lying in port, ice-bound and idle, does not give him a lien for his services.

That the Vulcan Iron-works Company has no standing in court is too plain to admit of doubt. It is conceded that the lien created by the statute of New York—Laws 1863, *c.* 422, amending chapter 482,

Laws 1862, (3 Rev. St. N. Y. [7th Ed.] 2410,)—expired July 2, 1885. The libel was not filed until August 14, 1885.

Nothing that was done by the sheriff or the master of the boat operated to revive or continue this lien. The state court had no jurisdiction. The process under which the sheriff took possession was null and void. His act was a trespass. The libelant acquired no rights by reason of this unlawful proceeding.

The same is true of the libel filed by Gobel and MacFarlane. When they commenced proceedings in this court their lien under the state law had expired. But the proposition was advanced, for the first time on the argument, that this claim may be sustained, in whole or in part, as a salvage service, and an amendment in this respect is asked for. It is entirely clear that only the earliest services rendered by the libelants, forming but a small part of their entire claim, can, in any view, be classed under the head of salvage. In order, therefore, to make their position tenable, the court must arbitrarily apply the payment of $2,500 received by the libelants upon the subsequent items of their account. Where so many creditors are seeking payment from an inadequate fund, it would be an arbitrary exercise of judicial discretion to thus allow an amendment changing the entire nature of the claim after having first arranged the proof to make the amendment available.

The libels filed by the Vulcan Iron-works Company, Tanner, and Lyon, and by Gobel and MacFarlane, must be dismissed, but without costs.

The libel filed by Thomas Dobbie alleges a claim for salvage in pumping out and raising the Sumner after she was injured by fire, and sunk in the harbor of Oswego, in the spring of 1884. The libel was taken *pro confesso* on the first of September, 1885, and a decree was entered referring it to a commissioner to report the amount due. The libel states a cause of action *in rem*, and, as these allegations stand admitted, no reason is perceived why the libelant should not recover. If, in deciding this case, the court were permitted to consider the evidence returned in the other actions against the Sumner, it is by no means certain that the libelant could succeed, for it is at least doubtful whether services rendered in raising the vessel after she had sunk at her dock can be dignified by the name of "salvage." This question, though argued by counsel, is not decided, for the reason that it is not presented by the record.

The libelant Thomas Dobbie is entitled to a decree for $134.94, with interest from March 15, 1886, and costs.

It is altogether probable that the sums thus allowed will exhaust the fund in court. Should any remnants remain in the registry after paying the amounts due the seamen, the decrees previously taken by default, and the claim of Thomas Dobbie, they should be paid over to the claimant, provided no claim entitled to precedence is in the mean time brought to the attention of the court.