## THE ESTRADA PALMA.

(District Court, E. D. Louisiana, New Orleans Division. August 27, 1923.)

1. Maritime liens ⚖═6—General agents for steamship held not entitled to lien in libel proceedings.

General agents of steamship, who collected all freight and signed bills of lading for her, *held* not entitled to lien for amount of claim in libel proceedings.

2. Maritime liens ⚖═37—Shipping ⚖═69—Captain of vessel held entitled to lien but not superior to other contract liens under general maritime law.

Captain of vessel *held* entitled to lien, though not to lien superior to other contract liens under general maritime law.

3. Shipping ⚖═133—Claimant of damages for nondelivery of perishable goods held not lien on vessel delayed by seizure under legal process, and there could be no complaint of allowance of a lien ranking last.

Claimant of damages for nondelivery of consignment of very perishable onions, due to seizure of vessel under legal process, *held* not entitled to lien on vessel, in view of Harter Act, § 3 (Comp. St. § 8031), and exempting clause in bill of lading, and claimant could not complain because a lien was allowed him and ranked last.

4. Maritime liens ⚖═37—Claims for wharfage and watchman employed while ship was at wharf held not entitled to preference.

Claims for wharfage and watchman employed while ship was at wharf *held* not entitled to preference.

In Admiralty. Libel by John Alsina & Co., Limited, against the steamship Estrada Palma. On exceptions to Commissioner's report. Exceptions sustained in part; in other respects report approved.

Terriberry, Rice & Young, of New Orleans, La., for Richard Meyer Co.

W. J. & H. W. Waguespack, of New Orleans, La., for Jose Ybarrmia.

Scott E. Beer, of New Orleans, La., for Kohlmann Bros. & Sugarman.

FOSTER, District Judge. The steamship Estrada Palma was seized at the instance of libelant, John Alsina Company, Limited, on a claim for materials furnished, and was subsequently sold by the marshal, bringing $8,100, which was deposited in the registry of the court less the marshal's costs. There are various interventions, for seamen's wages, supplies, pilotage, wharfage, and other claims. The case went to a Commissioner, who proceeded to hear the evidence and pass on the claims. The Commissioner has also endeavored to rank the various claims, as the fund is insufficient to pay all of them. It is only necessary to consider the exceptions to the commissioner's report.

W. G. Coyle & Co., Kohlman Bros. & Sugarman, Inc., and Richard Meyer & Co. have filed exceptions. Coyle & Co. except to the ranking of the claims and except particularly to the allowance of the claim of Jose Ybarrmia. Kohlman Bros. & Sugarman are claiming damages for nondelivery of a consignment of onions, and object to being ranked last in the claims allowed. Richard W. Meyer & Co. object to the finding of the master denying them a lien at all, and do not object to the ranking of the claims as made.

### Richard W. Meyer & Co.

[1] The claim of Richard W. Meyer & Co. was rejected by the commissioner on the ground that they were general agents of the steamship and not entitled to a lien. The Commissioner was right in so holding. There is no doubt that Richard Meyer & Co. were general agents of the ship, collected all the freight and signed bills of lading for her; the express provision of the bill of lading being that the freight should be paid to them. It would appear from the record in this case that freight was paid even after the seizure of the ship, but there is nothing to show whether it was paid to Richard W. Meyer & Co. or some other representative or the owner himself direct, but at any rate it was a fund to which the agents might look. There is no distinction between this claim and the claims considered in the case of The Owego (D. C.) 292 F. 403, 1923 A. M. C. 1060, decided to-day. On the authority of that case and those therein cited, the finding of the master as to this claim will be approved.

### Claim of Jose Ybarrmia.

[2] This intervener was captain of the vessel and contends he has a lien under the law of Cuba. The evidence in the record seems to show that he was entitled to a lien, and the finding of the master will be approved; however, I do not think his lien should be superior to other contract liens under the general maritime law.

### Kohlman Bros. & Sugarman.

[3] Kohlman Bros. & Sugarman claim damages to several shipments of onions. On the day the onions were received on board the ship, just as she was about to sail, she was attached under admiralty process, issuing at the instance of the libelant in this case. The freight was very perishable. There is testimony showing that it would not survive shipment for more than six days, and that under the best conditions a certain portion of it was bound to be spoiled when delivered. Bills of lading were issued for this shipment, and contain a clause exempting the vessel from liability for damages occasioned by legal process. This is in keeping with section 3 of the Harter Act (Comp. St. § 8031), which exempts the vessel from liability for damages occasioned by seizure under legal process. There is nothing to show that the vessel was unseaworthy or that the seizure was occasioned by any fault or negligence of the master or owners of the ship. Kohlman Bros. & Sugarman ought not to complain because their claim is ranked last, as under the evidence of the case they are not entitled to a lien at all.

The Commissioner, in ranking the claims, has placed that of Anselmo Oteri first. I am unable to determine from the report what might be the nature of this claim, but, as no one has objected to its being given the first rank, and as all of the claims of the seamen have been recognized by all interveners and have been paid out of the fund, there is no occasion to disturb it.

He ranks next the claim of the Associated Branch Pilots and claims of William Lumberd, Ivan Cox, Walter Thompson, Albert Zibilich, and Henry J. Post, river pilots, as being entitled to being paid by preference.

[4] He ranks third the claims for wharfage and watchmen employed while the ship was at the wharf. There is no reason to give these claims any preference. Pilotage, wharfage, and watchmen are mere contract claims, and there is nothing in the case that would require preferential treatment over the claims of materialmen.

The exceptions to the Commissioner's report, in giving preferential ranking to the above claims and that of Jose Ybarrmia will be sustained, and they will be placed all on the same footing, and entitled to be paid pro rata out of the amount remaining in the registry of the court, together with all the other claims allowed by the commissioner.

In all other respects the report of the Commissioner will be approved.