### THE WILLIAM LEISHEAR.

District Court, D. Maryland. September 21, 1927.

No. 1505.

**1. Maritime liens ⟐⟐37(1)—General order of priority stated.**

From decisions the following general order of priority of maritime liens may be deduced, irrespective of time of accrual and subject to special exceptions: (1) Seamen's wages; (2) salvage; (3) tort and collision liens; (4) repairs, supplies, towage, wharfage, pilotage, and other necessaries; (5) bottomry bonds, in inverse order of application; (6) nonmaritime claims.

**2. Seamen ⟐⟐27(9)—Seamen held to have first lien for wages on proceeds of sale of schooner.**

Seamen, having contracts to ship on an oyster schooner at stated wages per month, though, owing to her being laid up for repairs, they never actually shipped, but held themselves in readiness and performed work aboard her of various kinds, *held* entitled to first lien on the fund arising from her sale in admiralty.

**3. Salvage ⟐⟐40—Salvage claim given priority of lien after wage claims.**

Salvage claim for floating and delivering at dry dock stranded schooner, under contract with managing owner, allowed in reduced amount and given priority of lien next after wage claims on proceeds of sale of vessel.

**4. Seamen ⟐⟐27(9)—Lien for repairs held to rank next to liens for seamen's wages and salvage (Merchant Marine Act 1920 [46 USCA § 971]).**

Claim for repairs allowed and given lien, under Merchant Marine Act 1920, § 30, subsec. P (46 USCA § 971 [Comp. St. § 8146¼ooo1]), ranking next to liens for seamen's wages and salvage.

**5. Wharves ⟐⟐18—Right to lien for wharfage ceases when vessel is seized under libel.**

Furnishing wharfage to vessel engaged in navigation gives right to lien, but right ceases when vessel is seized under libel.

---

[1] Oral opinion.

**6. Maritime liens ⊕⇒4—There is no lien for watchman's services on vessel in custody of court.**

There is no maritime lien for services of a watchman on a vessel held in custody of the court.

**7. Maritime liens ⊕⇒9—Hauling sails for vessel overland gives no right to lien.**

Hauling sails for a vessel overland is not a maritime service, and gives no right to lien.

In Admiralty. Suit by George H. Larmore and Woodland A. Anderson, partners trading as the White Haven Shipbuilding Company, against the schooner William Leishear. Decree distributing proceeds of sale.

A. W. W. Woodcock, of Baltimore, Md., for libelant.

Marbury, Gosnell & Williams, of Baltimore, Md., for respondent.

COLEMAN, District Judge. The schooner William Leishear was sold under admiralty process as a result of various libels, and this proceeding is to determine the rights, if any, of the libelants to share according to their respective priorities in the net proceeds of the sale amounting to $1,011.17. The claims are as follows:

(1) For salvage under a written contract dated July 22, 1926, $850.

(2) For labor and materials furnished between September 1 and November 20, 1926, $4,132.90.

(3) For transporting the sails of the vessel on or about October 1, 1926, $45.

(4) For wages of crew during October and November, 1926, $640.

(5) For wharfage from November 20, 1926, to March 26, 1927, $126.

(6) For watchman from January 19, 1927, to March 26, 1927, $198.

It is obvious that the proceeds will be grossly insufficient to pay all demands. Therefore the fund must go to those entitled to priority as far as possible, and the unsatisfied claimants must seek elsewhere for payment. See language of Ware, J., in The Paragon, 18 Fed. Cas. 10708.

[1] The question of priority of maritime liens is filled with confusion. The rules conflict. Tort liens generally rank contract liens. The John G. Stevens, 170 U. S. 113, 18 S. Ct. 544, 42 L. Ed. 969. Seamen's wage liens are especially favored under the ancient doctrine, that has come down to us, that seamen are in effect wards of the admiralty. The Idle Hour (D. C.) 63 F. 1018. So also of salvage, since the law wishes to encourage persons in saving maritime property from destruction. Provost v. The Selkirk, 20 Fed. Cas. 11455. All maritime claims rank all nonmaritime. The J. E. Rumbell, 148 U. S. 1, 13 S. Ct. 498, 37 L. Ed. 345.

There is the general rule that maritime liens rank in an order inverse to the order of their creation (The St. Jago de Cuba, 9 Wheaton, 409, 6 L. Ed. 122), a principle contrary to what is common in other branches of the law. Without going at any length into the ancient historical reasons for this anomaly, suffice it to say that in this country two theories exist as the basis of this admiralty doctrine. They are, first, that each person acquires a jus in re, and becomes a sort of coproprietor in the res, and therefore subjects his claim to the next similar lien which attaches; and, second, that the last beneficial service is the one that continues the activity of the ship as long as possible, and therefore should be preferred, provided that what is produced or contributed to by the service is a voyage. The Glen Island (D. C.) 194 F. 744. Under the second theory, there is the consideration that beneficial additions subsequent to earlier liens add to the value of the ship, and that, therefore, to prefer such additions will not deprive the earlier lienors of any interest which they would have had, if no such services had been rendered.

Generally speaking, the law of maritime liens may be said to be made up of exceptions to the above doctrine, which gives priority to the lien latest in point of time, so that to-day it is possible to deduce, from the decisions, the following order of priority, existing irrespective of time, which represents the weight of authority: (1) Seamen's wages; (2) salvage; (3) tort and collision liens; (4) repairs, supplies, towage, wharfage, pilotage, and other necessaries; (5) bottomry bonds in inverse order of application; (6) nonmaritime claims. This, however, is no more than a very general statement, since any summary is subject to further exceptions of more or less narrow application. With this general background, we may now take up the various claims involved in the present case.

[2] 1. The wage claims amounting to $640, are made by five sailors, claiming to have had contracts to ship as crew on board the schooner for the oyster dredging season at a fixed rate per month, and that, whereas, because the schooner was laid up, undergoing repairs, they never actually shipped aboard her, they nevertheless, during part of the period, did various kinds of work aboard her, from carpentering to cooking, and that they are thus entitled to be paid their stipulated wages, just as if the vessel had been in commission. It appears that they did make some

effort to obtain other employment after they learned the schooner would not be in commission, but were unsuccessful.

In view of the special consideration universally accorded wage claims by the admiralty courts, it seems not unreasonable to hold upon these facts that the seamen are entitled to a lien for their wages, where, through no fault of their own, they are prevented from earning them aboard the vessel while in navigation. Levering v. Bank of Columbia, Fed. Cas. No. 8286; The Alanson B. Sumner (D. C.) 28 F. 670. It is also argued that these wages should not be allowed because the libelants were engaged in a profit-sharing arrangement respecting the impending voyage. But the evidence does not sustain this contention.

A lien is therefore allowed to each of these libelants for the respective amounts claimed, aggregating $640. Such are entitled to first priority. The weight of authority seems clear to this effect, especially in view of the fact that the services were performed subsequent to the salvage. See The Lillie Laurie (C. C.) 50 F. 219; Dalstrom v. Schooner Davidson (D. C.) 1 F. 259. It has even been held that claims due seamen, which are not strictly wage claims, such as for penalties and repatriation expenses, are to be classed as wages and entitled to the priority generally accorded to them. The Lancastrian (D. C.) 290 F. 397, 1923 A. M. C. 840; Gerber v. Spencer (C. C. A.) 278 F. 886.

That wage claims precede repair and supply liens is well established. The Grapeshot (D. C.) 22 F. 123; The G. F. Brown (D. C.) 24 F. 399; The Philomena (D. C.) 200 F. 873. Wage claims also precede wharfage. Provost v. The Selkirk, 20 Fed. Cas. No. 11455.

[3] 2. As to the claim in the nature of salvage for floating and delivering the schooner at the shipyard, the evidence is that the vessel, being hard aground in one of the small tributaries of Chesapeake Bay as the result of a storm, and there not being sufficient rise of the tide to float her, the intervening libelant, pursuant to a contract to salvage her, dug a ditch some 300 or 400 feet long, 5 feet deep and 20 feet wide, thereby floating her. While this work was done in the month of July, no claim appears to have been made until the intervening libel was filed, some seven months later. The salvor was the son of the managing owner of the vessel, with whom he contracted, and the only written evidence of the claim is a certificate, signed by the managing owner. In spite of

some doubt in the mind of the court as to the entire good faith of this claim as actually made, by reason of its size and the rather peculiar surrounding circumstances, the court believes that a salvage service was performed. The Gulfport (C. C. A.) 250 F. 577. See, also, Simmons v. The Jefferson, 215 U. S. 130, 30 S. Ct. 54, 54 L. Ed. 125, 17 Ann. Cas. 907.

Salvage is a service voluntarily rendered to a vessel needing assistance, and is designed to relieve her from distress or danger, either present or reasonably apprehended. The Blackwell, 10 Wall. 1, 19 L. Ed. 870; The Pleasure Bay (D. C.) 226 F. 55; The Neshaminy (C. C. A.) 228 F. 285. It is true that every salvage contract is not to be set aside because it seems excessive. It is within the discretion of the court to cut down the award, as required by the peculiar circumstances of the case. The Elfrida, 172 U. S. 186, 19 S. Ct. 146, 43 L. Ed. 413. Therefore a quantum meruit claim in this case would appear to be justified, and the court feels that $350 is reasonable and proper. This lien is entitled to second priority, because it ranks supply and repair liens, The Thomas Morgan (D. C.) 123 F. 781; The Dredge No. 1 (D. C.) 137 F. 110; Great Lakes Towing Co. v. St. Joseph, Chicago S. S. Co. (C. C. A.) 253 F. 635 (torts and supplies); The Virgo (D. C.) 46 F. 294; and also wharfage, Provost v. The Selkirk, supra.

[4] 3. As to the claim for labor and materials, which amounts to $4,132.90, there is no evidence that any of the items comprising this bill are unreasonable. It appears that the shipbuilding company, which did the work, received instructions to put her in first-class condition for the approaching oyster season, and that it was found necessary to make very extensive repairs. Hence the large bill. The labor and materials so used created a maritime lien, under the Merchant Marine Act of 1920. 41 Stat. 1005, subsec. P (46 USCA § 971 [Comp. St. § 8146¼-ooo]); The Harvard (D. C.) 270 F. 668. See, also, Piedmont Coal Co. v. Seaboard Fisheries, 254 U. S. 1, 11, 41 S. Ct. 1, 65 L. Ed. 97. This lien is third in order of priority. It ranks evenly with all like liens of even date. Saylor v. Taylor (C. C. A.) 77 F. 476; The Estrada Palma (D. C.) 8 F.(2d) 103, 1923 A. M. C. 1040; The Jack-O-Lantern (D. C.) 282 F. 899.

[5] 4. Next is the claim for wharfage. There seems no doubt but that a lien exists for this service even as to a domestic vessel, since this is a necessary maritime service during the course of repairs. The Kate Tre-

maine, Fed. Cas. No. 7622; The Scow No. 15 (C. C. A.) 92 F. 1008. But after the filing of the libel the vessel was withdrawn from navigation, and no further lien for wharfage accrues. The Poznan (C. C. A.) 9 F.(2d) 838, 846. The claim is therefore allowed from and including November 20, 1926, to and including January 19, 1927, or 61 days, which, at $1 per day, amounts to $61. Since the wharfage service was performed about the same time that the materials and supplies were furnished, this claim ranks equally with the claim for the latter. The Estrada Palma, supra; Saylor v. Taylor, supra.

[6] 5. The claim for services of the watchman covers the period from January 19, 1927, the date of the filing of the libel, to March 26, 1927, the date when the vessel was sold. The vessel being under custody of the marshal during this period, the watchman's services cannot be regarded as maritime. The Fortuna (D. C.) 206 F. 573. This claim is therefore not allowed.

[7] 6. Likewise the claim for transporting sails is not allowed. No part of the service seems to have been rendered upon the vessel. From the libel it appears that nothing was done, other than to haul the sails overland from Crisfield, Md., to the shipyard at White Haven, Md., where the vessel was being rebuilt. This cannot be regarded as a maritime service, and falls in the class of contracts only incidentally maritime. Gilbert v. Roach (C. C.) 2 F. 393; The New Rochelle (D. C.) 8 F.(2d) 59, 1923 A. M. C. 362. See Benedict, 5th Ed. § 66.

Summarizing the situation with respect to the allowed claims, it is as follows: First, wage claims, $640; second, salvage claim, $350; third, materials, supplies, and wharfage, aggregating $4,193.90. Since the first two allowances will consume all but $21.17 of the total fund in the registry of the court, there is nothing left for the claims of the third group, which rank equally, except a pro rata share of this small residue.

A decree will be signed in accordance with these allowances.