**Jesse ROY**

v.

**M/V KATERI TEK and John Borchert, d/b/a and Hendrick Hudson Marina, Inc.**

**Admiralty No. 5279, Division B.**

United States District Court
E. D. Louisiana,
New Orleans Division.
March 4, 1965.

Edmond H. Fitzmaurice, Jr., Cahn & Provensal, Clarence M. East, Jr., New Orleans, La., for Atlas Subsidiaries of New England, Inc.

Amos L. Ponder, Jr., New Orleans, La., for Empire Ice & Fuel Co., Inc.

FRANK B. ELLIS, District Judge.

This *in rem* libel against the 104-foot long M/V KATERI TEK was launched by an unpaid creditor. The vessel was in due course seized and sold under Court administration, and eventually all but two of the claims were compromised and paid from the proceeds in the registry of the court. The parties remaining are Empire Ice & Fuel Co., Inc. (Empire), with a claim for fuel and ice supplied while the vessel was *in custodia legis,* and Atlas Subsidiaries of New England, Inc. (Atlas), a mortgage creditor. Eight hundred and twenty-five dollars ($825.00) remains on deposit with the court and is sufficient to satisfy Empire's claim should it eventually be entitled to priority over the mortgage held by Atlas. The matter is presently before the Court on Atlas' motion "to pay mover herein the sum of money now held in the registry of the Court in this matter and dismiss the claim of Empire Ice & Fuel Co., Inc." This motion technically is one for summary judgment under Admiralty Rule 58, 28 U.S.C.A., and will therefore be treated as such.

The parties do not dispute the fact that Atlas has a preferred mortgage lien valid under the Ship Mortgage Act of 1920, as amended, 46 U.S.C.A. § 911 et seq., especially 46 U.S.C.A. § 922. As such the mortgage has priority over all other claims except (a) preferred maritime liens, which are defined in 46 U.S.C.A. § 953(a) to include only liens accruing prior to the mortgage as well as claims for tort damages, wages, general average and salvage, and (b) "expenses and fees allowed and costs taxed, by the court" under 46 U.S.C.A. § 953(b) (2).

The claim asserted by Empire for supplies does not constitute a preferred maritime lien under section 953(a) since it neither arose prior to the mortgage of Atlas nor is it for tort damages, wages, general average or salvage. However, the case here turns,

> "not upon the existence of a maritime lien, but upon principles of general application which should govern whenever a court undertakes the administration of property or a fund brought into its custody for the benefit of suitors." New York Dock Company v. Steamship Poznan, 274 U.S. 117, 120, 47 S.Ct. 482, 484, 71 L.Ed. 955 (1927).

While Empire's claim would not constitute a preferred maritime lien then, it did accrue at a time when the vessel was *in custodia legis,* and the claim may thereby have achieved the status of priority over the mortgage lien by virtue of section 953(b) (2) as "expenses. * * * allowed * * * by the court." The wording of that section clearly indicates that the term "expenses" comprehends something more than costs taxed by the court.

In expanding upon the language quoted above, the Supreme Court, in the Poznan case, indicated that any expense permitted to be incurred by the custodial court on behalf of the vessel after it has been seized would come within the scope of an expense allowed by the court.

> "The most elementary notion of justice would seem to require that services or property furnished upon the authority of the court or its officer, acting within his authority for the common benefit of those interested in a fund administered by the court, should be paid from the fund as an 'expense of justice.'" 274 U.S. at p. 121, 47 S.Ct. p. 484.

The factual situation leading to the Poznan decision further indicates that while a vessel is *in custodia legis* even expenses incurred by implication without an authorizing court order may be paid by priority "as an 'expense of justice' incurred for 'the common benefit.'" Gilmore & Black, The Law of Admiralty, p. 498, § 9–11 (1957 ed.). When navi-

gating in this backwater area of the admiralty jurisprudence then, this court is admonished to weigh deeply the undercurrents of justice and equity which ripple the surface.

Here the M/V KATERI TEK was seized June 20, 1962, and Harold Peres was specially appointed consent keeper. On June 30, 1962, the authority of the consent keeper was "enlarged" by order of this court to permit his making charter fishing trips for profit out of Empire, Louisiana, and within the jurisdiction of this Honorable Court. Thereafter, on July 30, 1962, Harold Peres was released as "consent keeper" and by the same order the captain of the vessel, Joseph Bernier, was in his stead "specially appointed as consent keeper." For a period of almost three months Captain Bernier continued to engage the vessel in charter fishing trips for profit and in the process procured the fuel and ice for which Empire is here claiming payment.

The narrow issue remaining then is whether Captain Bernier's appointment as consent keeper in place of Harold Peres carried with it the continued authority to engage the vessel in charter fishing trips and incur expenses necessary to that end. If such authority was in fact conferred, the expenses for supplies would manifestly be ones allowed or authorized by this Court's order of June 30, 1962, and Empire's claim would enjoy priority over the mortgage held by Atlas.

It is significant to note, then, that there was no modification of the Court's charter authority order dated June 30, 1962, when Captain Bernier assumed the position of consent keeper one month later. Moreover, he continued to operate the vessel on charter fishing trips for profit in a sanctioned dual capacity as consent keeper and captain. From those circumstances it is this Court's considered opinion that as a matter of law Captain Bernier took the keepership as he found it and therefore possessed the authority to incur the expenses for supplies provided by Empire in the stipulated amount of $776.61. After payment of that amount to Empire from the funds remaining in the registry of the Court in this matter, the balance of $48.39 would be payable to Atlas.

At present the only matter before the Court is the motion of Atlas for summary judgment, and in light of the foregoing discussion that motion must be respectfully denied with the direction that the parties should settle this matter voluntarily in keeping with the reasons herein given.