**David W. PYNE, Administrator of the Estate of Ludwig Peterson, Jr., Deceased, Plaintiff,**

v.

**OIL SCREW FISHING VESSEL CHRISWAY, her boilers, engines, tackle, apparel and furniture, Defendant,**

**C. I. T. Corporation and United States of America, Intervenor.**

**Civ. A. No. 922.**

United States District Court
S. D. Georgia,
Brunswick Division.

April 30, 1969.

---

Ronald F. Adams, Q. Robert Henry, Adams & Henry, Brunswick, Ga., for plaintiff.

Edward T. Brennan, Savannah, Ga., for intervenor.

John Ryan, Norfolk, Va., for defendant.

## ORDER ON C.I.T.'S MOTION FOR PAYMENT OF WATCHMAN EXPENSES

LAWRENCE, District Judge.

C.I.T. Corporation as preferred ship's mortgagee intervened in this libel proceeding which was brought in tort by a deceased seaman's representative. Movant seeks the allowance of expenses in the amount of $910.00 for watchman services furnished and paid for by it after the fishing vessel "Chrisway" was attached by the United States Marshal.

The vessel was libeled on October 4, 1968. In order to protect its interest C.I.T. Corporation, which at the time was not a party, had a watchman placed aboard the libeled shrimp boat. A guard remained aboard until January 10, 1969. The watchman rendered security services and helped keep the vessel afloat by maintaining the pumps. The services in question were not expressly ordered or authorized by the United States Marshal. The Court was not aware that a watchman had been placed aboard the "Chrisway."

After it intervened, C.I.T. Corporation filed this motion asking allowance of the amount advanced by it. Is it entitled to reimbursement?

Watchman services furnished to a vessel *in custodia legis* do not constitute a maritime lien in favor of the performer. The William Leishear, 21 F.2d 862 (Dist.Ct.Md.,1927). However, the present case turns "not upon the existence of a maritime lien, but upon principles of general application which should govern whenever a court undertakes the administration of property or a fund brought into its custody for the benefit of suitors." New York Dock Co. v. Steamship Poznan, 274 U.S. 117, 121, 47 S.Ct. 482, 484, 71 L.Ed. 955. The Court further stated in that case, "The most elementary notion of justice would seem to require that services or property furnished upon the authority of the court or its officer, acting within his authority, for the common benefit of those in-

terested in a fund administered by the court, should be paid from the fund as an 'expense of justice.' "

In the *Poznan* case the lower Court did not in express terms authorize the wharfage expense. However, it had refused to permit the vessel to leave the place where it was tied up. "It is enough," the Supreme Court said, "if the court approves the service rendered or permits it to be rendered, and it inures to the benefit of the property or funds in its custody." See 274 U.S. 123, 47 S.Ct. 485.

In Roy v. M/V Kateri Tek, 238 F.Supp. 813 (1965), while *in custodia legis*, the vessel was used by the captain-keeper for charter fishing trips as a previous court order had authorized a former keeper to do. A supplier of fuel and ice filed a claim. The District Judge said, "The factual situation leading to the Poznan decision further indicates that while a vessel is *in custodia legis* even expenses incurred by implication without an authorizing court order may be paid by priority 'as an "expense of justice" incurred for "the common benefit." ' "

 In the present case C.I.T. acted as a mere volunteer in arranging for the watchman services aboard the "Chrisway." They were of value to the vessel and to other parties. Approval of such expenses can be found by implication and, as far as this Court is concerned, vicariously. The Marshal's office was aware of both the need and the fact of a watchman being aboard the attached vessel. I think this brings the advances by C.I.T. within the realm of "an expense of justice." I so hold.

■ This does not mean that the full amount paid for a watchman is reimbursable. In the exercise of its admiralty jurisdiction, the Court must administer the fund in accordance with the equitable principles that are applicable in such

cases. See 274 U.S. 122, 47 S.Ct. 482. My idea of an equitable solution is to allow one-half of C.I.T.'s claim, that is to say, the sum of $455.00 in reimbursement of its outlay. Among the equities considered in thus reducing the amount allowed is the fact that no court order was obtained nor formal arrangement made with the Marshal as to the watchman services.[1] Admiralty courts must maintain some sort of control over custodial expenses (though they were reasonable enough here) which are incurred in the protection of property while in the Marshal's custody. They cannot be determined or measured by the voluntary action of parties at interest and the latter act at their risk in the absence of express authorization.

---

1. "Generally, where a vessel is in custody under court process, the reason for the maritime lien disappears since the wharfage and custodial costs may be recovered as administrative costs in the legal proc-

ess. The *Poznan, cit. supra,* at least by application for a court order for these during the legal process." City of Erie v. S.S. North American, 267 F.Supp. 875 (1967) at p. 880.