## THE MERRIMAC.

(District Court, S. D. Florida. January 27, 1917.)

1. ADMIRALTY ⬤⟹28—PROCEEDINGS IN REM—EFFECT OF STATE LAWS.

Whether a proceeding in rem can be maintained against a vessel for tort causing death depends upon the construction of the state laws.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 278–288.]

2. ADMIRALTY ⬤⟹48—DECREE IN REM—PROCESS TO SUPPORT.

A decree in rem cannot be rendered against a vessel by an admiralty court, where no attachment was ever served.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 404–413.]

3. ADMIRALTY ⬤⟹46—DECREE IN PERSONAM—PROCESS TO SUPPORT.

The ordinary monition issued in suits in rem in admiralty does not comply with the requirements of the monition in personam, and under service thereof jurisdiction to render a decree in personam cannot be maintained.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 393–395.]

4. ADMIRALTY ⬤⟹44—PROCESS—EFFECT OF APPEARANCE.

Where, in a suit in admiralty, defendant filed exceptions challenging the sufficiency of the libel and an answer putting in issue its allegations of fact, it made itself a party to the proceeding in such manner that the court had jurisdiction to proceed to an adjudication of the rights of the parties in personam, though there was not a sufficient service of process to support a decree in personam.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 376–384.]

5. CONSTITUTIONAL LAW ⬤⟹245—MASTER AND SERVANT ⬤⟹11—VALIDITY OF STATUTES.

Laws Fla. 1913, c. 6521, regulating the liability of employers for injuries to employés, does not violate Const. U. S. Amend. 14, because it includes, in the persons, firms, and corporations subject thereto as engaged in hazardous occupations, persons and corporations engaged in boating, when the boat is propelled by steam, gas, or electricity, thereby excluding sailing vessels.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 702.]

6. SHIPPING ⬤⟹84(5)—INJURIES TO STEVEDORES—ASSUMPTION OF RISK—STATUTORY PROVISIONS.

A stevedore, engaged in loading or unloading a steam vessel, is within the protection of Laws Fla. 1913, c. 6521, section 4 of which abolishes the doctrine of assumed risk in all cases arising thereunder.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 342.]

7. SHIPPING ⬤⟹84(5)—INJURIES TO STEVEDORES—CONTRIBUTORY NEGLIGENCE.

An experienced stevedore, engaged in such business for many years, was guilty of negligence contributing to his injury, caused by the negligent handling of a hatch cover, where it appeared that it was dangerous to be under the hatch when the ship was being loaded and when covers were being placed upon the hatch, and that stevedores were cautioned about this and warned not to stand under the hatches at such time.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 342.]

**8. SHIPPING** ⊜➤84(5)—**INJURIES TO STEVEDORES—CONTRIBUTORY NEGLIGENCE.**

Under Laws Fla. 1913, c. 6521, § 3, abolishing the defense of contributory negligence as a bar to an employé's suit for injuries, except where the injured party and the person whose negligent act caused the injury are fellow servants engaged in the performance of the act causing the injury, and the employer is guilty of no negligence contributing to the injury, contributory negligence of a stevedore, engaged in loading a vessel, but having nothing to do with the work of putting a cover on a hatch, did not bar recovery for injuries caused by the negligence of the stevedores engaged in placing such cover.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 342.]

**9. DEATH** ⊜➤95(1)—**DAMAGES FOR DEATH—AMOUNT.**

Four thousand dollars would be a proper award for the death of a stevedore having a life expectancy of 27 years, and having a wife 6 years younger than himself and three children, where it was not shown how much he expended on his family in their care and maintenance.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 108, 113-115, 120.]

In Admiralty. Libel by Gabriella Moody against the Merchants' & Miners' Transportation Company and the steamship Merrimac. Decree in personam against the Transportation Company.

A. H. King, Roswell King, and George C. Bedell, all of Jacksonville, Fla., for libelant.

Fleming & Fleming and Joseph S. Diver, all of Jacksonville, Fla., for respondent.

CALL, District Judge. On April 14, 1917, libel was filed against the Merchants' & Miners' Transportation Company, owners, and against the steamship Merrimac, in rem. Upon this was issued an attachment against the vessel, and also a monition in the usual form used in this district, admonishing the parties interested in the vessel to appear on a certain day, and requiring the marshal to serve a copy on the master, agent, or owner of said vessel, and by publishing a notice in the newspaper. The attachment of the vessel was never served at the request of proctors for libelant. The monition was on April 15th served upon Horace Avery, "agent for the Merchants' & Miners' Transportation Company, owners of the within named steamship Merrimac, in the absence of the president, vice president, secretary, and treasurer, and other high officials."

On April 24th exceptions were filed by the Merchants' & Miners' Transportation Company to the libel, challenging the right of the libelant to proceed in rem. On the same day an answer was filed by the owners, admitting the ownership, etc., and denying liability. On June 9th an amended libel was filed in rem by leave of court against said vessel and in personam against the owners. Upon this amended libel no process was issued.

On June 20th the owners, by leave of court, filed exceptions to the amended libel, challenging the right of libelant to proceed in rem on the case made, and in the sixth and seventh grounds attacking the libel as not showing a cause of action against the owners. On the same day the owners filed, by leave of court, answer to the amended libel, setting up virtually the same defenses contained in the answer

filed April 24th, to the original libel. Testimony was taken, and the case brought on for final hearing. Thereupon the respondent insisted upon its exception filed on June 20th.

[1, 2] The consideration of said exceptions was opposed on the ground that answer having been filed at the same time as the exceptions was a waiver of same. This position of libelant I do not think well taken. These exceptions raise the question whether a proceeding in rem can be maintained in this state for a tort causing death. The decision of this question depends upon the construction of chapters 6521 and 6913 of the Laws of Florida. The Corsair, 145 U. S. 335, 12 Sup. Ct. 949, 36 L. Ed. 727. It is beyond question, I imagine, as said by Judge Locke, in The Nora (D. C.) 181 Fed. 845, that "the jurisdiction in actions in rem is only given by attachment and bringing the vessel into the custody of the court, and no valid decree can be entered without such attachment." In the instant case, as above noticed, no attachment was ever served. The vessel was never taken into custody, and hence no decree in rem could be entered in this suit. The question, therefore, whether a lien exists under the state law, becomes a moot question in this case. This disposes of the bulk of the exceptions.

The respondents also contend that libelant can have no relief in this case because she has brought a libel in rem and in personam joined, and such practice is not permitted under the admiralty rules promulgated by the Supreme Court. Rules 12 to 19 inclusive (29 Sup. Ct. xl, xli), provide against whom suits may be brought by materialmen, seamen, pilots, and in suits for damages by collision, for assault and battery, for hypothecation, on bottomry bonds, and for salvage. Unquestionably claims against the vessel and owners cannot be joined in claims coming within the terms of said rules. In The Corsair, supra, the court declined to decide whether there could be a joinder in other claims than those covered by these rules. For the reasons above noted, it is not requisite for this court to decide that question in this case.

[3, 4] The vital question that arises in this case is: Can this court, in the state of pleadings render a judgment in personam against the respondent? The answer to this question depends on whether the respondent, by filing the exceptions and the answer, has made itself a party to this proceeding in such manner that a decree in personam can be rendered against it, if the evidence warrants it. The monition served upon Avery was the ordinary one issued in suits in rem, and does not comply with the requirements of the monition in personam, and jurisdiction under such service cannot be maintained. If the pleadings filed by the respondent are tantamount to a general appearance, there is no more reason why a party may not submit himself to the jurisdiction of an admiralty court than to a court of equity or common law. The rule in those courts last named is that any pleading filed which requires the court to decide upon the merits of the case will be construed to be a general appearance and cure any defect of service; the court having jurisdiction of the subject-matter. In the instant case the sixth and seventh grounds of exception challenge the

sufficiency of the amended libel as against the respondents. This in effect admits, for the purpose of pleading, the truth of matters of fact alleged in the libel, but denies their sufficiency to make the respondents liable. It performs the office of a demurrer at common law, and under all the decisions a demurrer is equivalent to a general appearance. In addition, an answer was filed, putting in issue the allegations of fact upon which the liability of respondent was predicated. I am of opinion, therefore, that the respondent has made itself a party to this proceeding in such manner that the court has jurisdiction of the parties to proceed to an adjudication of their rights in personam.

[5] Chapter 6521, Laws of Florida, defines the persons, firms, and corporations engaged in hazardous occupations, and among them "boating, when the boat is propelled by steam, gas or electricity." Attack is made upon this act as violating the Fourteenth Amendment of the Constitution of the United States. The main contention is that it is unreasonable classification, in that sailing vessels are not included. Without pausing to discuss the cases, I have reached the conclusion that the act is not amenable to the objections urged.

[6] It is also urged that the deceased did not come within the purview of the act, because he was a stevedore, engaged in loading the ship, and not navigation. The statute refers to corporations engaged in "boating," and it is the employés of such corporations to whom the benefits are extended. Section 4 of the act abolishes the doctrine of assumed risk in all cases arising under the act. Therefore, if this case arises under the act, the defense of assumed risk interposed in the answer is disposed of.

It seems to me to be beyond controversy that a stevedore engaged in loading or unloading a steam vessel falls within the protection of the act. Section 3 of the act abolishes the defense of contributory negligence as a bar to the suit, except where the injured party and the person whose negligent act caused the injury are fellow servants, engaged in the performance of such act, and the employer is guilty of no negligence contributing to the injury. And provides for the apportionment of damages where the injured person and the employés of the corporation are at fault. Chapter 6913 provides for survival of actions. It is under the provisions of this chapter of the Laws of Florida that libelant as widow maintains her suit.

The libel in this case alleges two grounds of negligence: First, negligence of the respondent, in that the hatch cover was too short, and by reason of this defect it fell through and upon deceased; Second, that through the negligence of the agents and employés the hatch was allowed to fall upon the deceased. After considering all the evidence in the case, I cannot find that there was any defect in the hatch cover which caused it to fall. The great weight of the testimony shows that the hatch cover was in good condition, and was not in the condition the witnesses who were engaged in placing it in position testified it was. It is perfectly natural that these two men, whose act was responsible for the death of the deceased, should have sought to have excused themselves. In addition to this consideration is the fact that they were shown to have made statements of the occurrence different from those testified to in this case.

[7] There can be no question that the injury to the deceased was caused by the negligent handling of the hatch cover by these witnesses. This being so, it becomes necessary to decide whether the deceased was guilty of negligence contributing to this injury. The testimony of Buckley shows that it was dangerous to be under the hatch when the ship was being loaded, and when the covers were being placed upon the hatch above; that the stevedores were cautioned about this, and warned not to stand under the hatches at such times. The testimony shows Moody to have been an experienced stevedore, engaged in this business many years. It is fair to assume, therefore, that the deceased was fully aware of the danger, and knew the covers were being placed upon the hatches, preparatory to the vessel going to sea. I therefore find that the deceased was guilty of negligence that contributed to his injury.

[8] The next inquiry is: Were the stevedores, Dawkins and Washington, fellow servants jointly engaged in performing the act causing the injury. The testimony shows that these two persons were engaged in putting the cover on the hatch on the main deck, with which the deceased had nothing to do. Therefore it is not such a case as falls within the purview of section 3 of chapter 6521 of the Laws of Florida, where contributory negligence would bar recovery.

[9] It then becomes a question of the amount the libelant is entitled to recover. The testimony shows the average probable earnings of the deceased, but absolutely fails to furnish any guide as to the amount probably expended on his family in the care and maintenance, and the court is left in some measure to conjecture and the general knowledge that all men possess of the probable cost of the maintenance of a wife and three children in the walk of life of the libelant. Taking the life expectancy of the deceased 27 years as a guide to the probable duration of the marital relation between the deceased and libelant, the testimony showing the libelant some 6 years younger than deceased: Now, in addition to the monetary damage, a widow is entitled to recover damages for the loss of marital comfort and association she has sustained by reason of the death of her husband. I find that the libelant is entitled to a decree against the respondent for the sum of $4,000, and her costs in this behalf expended.

A decree will be entered for said sum.