## THE SUSQUEHANNA.

## THE SCHUYLKILL.

(Circuit Court of Appeals, Second Circuit.   June 9, 1920.)

Nos. 201, 202.

1. **Maritime liens** ☜11—**Statute as to repairs gives no lien for reconstruction of vessel.**
   Act June 23, 1910, § 1 (Comp. St. § 7783), giving to any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, a maritime lien enforceable by suit in rem, *held* not to give a lien for reconstruction of vessels under contract and involving large expense, nor to architects employed to make the plans and superintend the work.

2. **Admiralty** ☜11—**Contract for reconstruction of used vessel is maritime.**
   Contracts for reconstruction of vessels long in use and for making the plans and superintending the work of reconstruction are maritime.

3. **Admiralty** ☜25—**Objection to jurisdiction in rem may be waived.**
   Where a suit in rem is brought on a maritime contract, the claimant may waive objection to the form of suit, and a decree may be rendered against him, although the right to a lien is not established.

4. **Admiralty** ☜66—**Suit in rem may be changed by amendment to suit in personam.**
   Where in a suit in rem on a maritime contract objection to jurisdiction in rem is sustained by either the trial court or appellate court, libelant may be permitted to amend by praying judgment in personam against the owner and asking for the usual citation.

Appeals from the District Court of the United States for the Eastern District of New York.

Suits in admiralty by Harry G. Smith and Eugene L. Smith against the Steamship Susquehanna, the Susquehanna Steamship Company, claimant, and against the steamship Schuylkill, the Schuylkill Steamship Company, claimant. Decrees for libelants, and claimants appeal. Affirmed against claimant of the Susquehanna, and reversed as to the Schuylkill, with leave to amend libel.

Cass & Apfel, of New York City (Alvin C. Cass, of New York City, of counsel), for the Susquehanna.

Bullowa & Bullowa, of New York City (H. L. Cheyney, of New York City, of counsel), for the Schuylkill.

Thomas C. Burke, of Buffalo, N. Y., and Robert M. McCormick, of New York City, for appellees.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARD, Circuit Judge. Harry G. Smith and Eugene L. Smith, naval architects and marine surveyors, were employed by the owners of the lake steamers Susquehanna and Schuylkill to furnish plans and specifications for their alteration, so as to fit them for ocean navigation and to superintend the making of the said alterations by Buffalo Dry Dock Company. The principal work was in lengthening the steamers. These libels were filed against the steamers, respectively, to cover an alleged balance due in the case of the Susquehanna of $5,741.93 and of $6,020.41 in the case of the Schuylkill, and the usual stipulations for value were given to release them.

The claimant of the Susquehanna answered that there was no maritime lien for the libelants' services, or for a large part of them, and that they were entitled to receive nothing because they grossly failed in the performance of their duty to the claimant by permitting the Dry Dock Company to make overcharges at least to the amount of $200,-000. The claimant of the Schuylkill excepted to the libel on the ground that it did not set forth facts sufficient to constitute a maritime lien against the steamer.

Judge Chatfield overruled the exceptions, on the ground that the steamer was and had long been a duly enrolled vessel when the work was done, and that there was a lien for the libelant's services under the Act of June 23, 1910, although they were ordered by the owner in the home port.

Judge Garvin found that the contract was that the libelants should be paid 3 per cent. on the cost of the alterations, that no maximum limit was fixed, and that the libelants performed their work in a satisfactory manner in accordance with the contract. Although the time employed and the actual cost greatly exceeded the expectations of all concerned, he found that the claimant in each case continued to pay bills as rendered by the Dry Dock Company, and to pay the libelants commissions long after what they now say was the agreed limit of cost had been exceeded. We agree with him in these conclusions.

From the decree entered in favor of the libelants, both claimants took appeals. At the trial the claimant of the Susquehanna declined to except to the jurisdiction of the court; its counsel saying:

"As far as the Susquehanna is concerned, we do not raise the jurisdiction in this court. We yield to the jurisdiction of the admiralty court, either on express promise, or quantum meruit, or in any other way."

And no error was assigned in relation to jurisdiction nor was the question argued in this court. The claimant of the Schuylkill persisted throughout that there was no liability in rem. It would be useless to go over the many disputes as to facts which the District Judge has found in favor of the libelants, as we think rightly, and we therefore confine ourselves to the questions of law only.

[1] The first is the construction of the act of 1910 (Comp. St. §§ 7783–7787). Section 1 reads as follows:

"That any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel which

may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

The purpose of this section was to alter the then existing presumption that repairs, supplies, or other necessaries ordered by the owner in any port or by the master in the home port were furnished on the credit of the owner, in the absence of proof that credit was given to the vessel. The act gave a maritime lien in such cases on the vessel enforceable in rem for repairs, supplies, and necessaries ordered by the master or by a person authorized by him, without the necessity of proving that credit was given to the vessel. The work done by the Dry Dock Company in this case was more in the nature of reconstruction than of repairs. It was not of a kind that owners of shipyards would undertake without being fully advised of the security they were going to have for payment. Contractors for such work did not need the same protection as did small dealers. The fact that the use of dry docks or marine railways was included in express terms seems to us to justify a strict construction of the act.

[2] The work done by the Dry Dock Company and by the libelants were both maritime in character. The contract was not to build the vessel, which would be nonmaritime (People's Ferry Co. v. Beers, 20 How. 393, 15 L. Ed. 961), but to lengthen existing vessels which had long been employed in navigation. If the Dry Dock Company had been required to prepare the plans and specifications, the expense would have been a part of the maritime contract. In the case of a third person employed by the claimants to do so, and to superintend the work done under it, the services would be equally maritime.

[3] It seems to us that, though the libelants' services do not fall within the language of the act of 1910, they may be enforced against the Susquehanna, because the claimant has deliberately agreed to accept the jurisdiction of the court. This is not a case of giving jurisdiction by consent over a subject-matter of which the court has not jurisdiction. The cause of action is maritime, within the jurisdiction of the court, and the claimant merely waives an objection to the enforcement of it by a form of procedure against his property. He acquiesces in the court's jurisdiction over the thing belonging to him, just as he might over his person, though not properly served with process. It would certainly be sticking in the bark to compel a libelant in a suit in rem to begin a new suit in personam, notwithstanding that the claimant consented to have his rights determined in the suit in rem.

[4] But the considerations are different when the claimant insists upon his objection to jurisdiction in rem. The proper practice, if the objection is sustained in the District Court, was laid down by Judge Addison Brown in The Monte A. (D. C.) 12 Fed. 331:

"This libel should therefore be dismissed as against the vessel, * * * and the sureties upon the bond given upon her release should be discharged, but without prejudice to any application by the libelant, within 10 days, to amend the libel by praying judgment against the owner, who has heretofore appeared and answered herein, and for the usual citation against him, and after due service thereof, or his voluntary appearance, the cause to be heard upon the proofs already taken, and such additional proofs as either party may desire to add."

When the objection has been overruled in the District Court, but upon appeal sustained in this court, the libelant should have leave to make the same application here. It follows that the libelants are entitled to a decree against the claimant of the Susquehanna, its sureties being discharged, and that their libel against the Schuylkill be dismissed, unless on or before July 15th they apply to the senior Circuit Judge to amend by including a prayer for a decree against the owner in personam and for the usual citation against it.