## THE HARVARD.

### OCEAN ENGINE & BOILER WORKS, Inc., v. OLYMPIA SHIPPING CORPORATION et al.

(District Court, E. D. New York. December 21, 1920.)

1. **Maritime liens** ⬤═25—**Repairs may include improvements.**
   Work done on a vessel while afloat, although temporarily withdrawn from service, in making repairs and also enlarging and improving her carrying capacity, to fit her for intended future use, *held* of maritime character, and within the provision of Act June 23, 1910, c. 373 (Comp. St. §§ 7783–7787), giving a lien for repairs and necessaries.

2. **Maritime liens** ⬤═56—**Estoppel to deny liability or amount.**
   An account admitted or paid in part may be collected under an admiralty lien, even if there might be also a claim at law or in personam, on the doctrine of estoppel to deny liability or amount.

3. **Maritime liens** ⬤═17—**Statute does not enlarge maritime law.**
   Act June 23, 1910, c. 373 (Comp. St. §§ 7783–7787), does not change, by enlarging or diminishing, the classes of work for which liens are given from those recognized under the general maritime law.

In Admiralty. Suit by the Ocean Engine & Boiler Works, Incorporated, against the steamship Harvard; the Olympia Shipping Corporation, claimant, and the Equitable Trust Company of New York, intervening respondent. Decree for libelant.

Henry W. Baird, of New York City, for libelant.
Walter F. Welch, of New York City, for claimant.
Murray, Prentice & Howland, of New York City, for Equitable Trust Co. of New York.

CHATFIELD, District Judge. The Harvard was formerly a private yacht, and had been used by the government during the war. The libelant furnished work, materials, and plant in "repairing, altering, enlarging, and improving the vessel's carrying capacity," in order to fit it for the service which was desired by its new owner, the claimant

in this case. The government service necessitated repairs, in the strict sense of putting the boat in first-class order, and at the same time the superstructure and quarters were enlarged while the boat was temporarily withdrawn from service, but while afloat and in no way removed from its maritime character and surroundings.

[1] Under these circumstances there is no question that the entire matter was of a maritime nature and was not like People's Ferry Co. of Boston v. Beers, 61 U. S. 393, 15 L. Ed. 961, and The Dredge A (D. C.) 217 Fed. 617, in which construction of a boat for subsequent maritime use was held to be nonmaritime in character as a basis for jurisdiction. The cases of Smith v. Susquehanna and Smith v. Schuylkill (C. C. A.) 267 Fed. 811, point out this distinction. In those cases a boat was drawn out of the water and lengthened by having a midsection inserted. It was held that the work was maritime in character and that maritime jurisdiction attached; but this work was held to be that of construction, rather than repairs or necessaries to the vessel. The court held that the statute of June 23, 1910 (36 Stat. p. 604 [Comp. St. §§ 7783–7787]), did not enlarge the subject-matter of maritime liens, but did grant a lien where labor or materials (which previously could have been the basis of a maritime lien) were furnished to a vessel, even in a home port by the order of the master, or anywhere upon the order of the master or owner, although no proof of credit to the vessel was offered. This holding has been definitely established by the case of Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co. (Oct. 11, 1920) 254 U. S. 1, 41 Sup. Ct. 1, 65 L. Ed. ——.

In the present case it was contended by a mortgagee (whose rights are admittedly subject to maritime liens—The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345), that the work done upon the Harvard was not the basis of a legal maritime lien, either under the statute or under the general admiralty law. The matter was heard by the master, who has reported in favor of the libelant, and exceptions have been presented by both the claimant and by the mortgagee. The claimant has excepted to the finding and report of the master that the amounts were correct and that certain charges for labor could include the furnishing of tools. The basis of computation was to be upon a flat percentage rate over the amount expended.

The evidence supports the master's construction of the contract, that the charge for labor properly included a charge for improved tools, where thereby the labor item was greatly diminished. The claimant contended that the contract was entered into upon the understanding that these labor-saving devices would be employed, just as a carpenter would be expected to use his own hammer and saw without extra charge therefor. But the master's finding that this case presented different conditions, and that the item of labor did include more than actual wages, would seem to be correct.

[2] The master's findings as to the other items to which the claimant has excepted are also supported by the testimony and should be sustained. An account admitted or paid in part may be collected under an admiralty lien, even if there might be also a claim at law or in personam, on the doctrine of estoppel of the right to dispute liability and

amount. The J. S. Warden (D. C.) 155 Fed. 697; The Hattie Thomas (C. C. A.) 262 Fed. 943.

[3] This leaves only the question as to the possibility of obtaining a lien for mixed alterations and repairs as to which there is room for argument. Strict construction of the statute of 1910 does not require a holding that Congress intended to diminish the instances in which previously a maritime lien could be obtained. As was said in the Case of the Piedmont, etc., Co., supra, and in The Hatteras, 255 Fed. 518, 166 C. C. A. 586, and The J. Doherty (D. C.) 207 Fed. 997, this statute was not intended to enlarge the class of services and materials for which a lien could be had; but under the general admiralty law the words "repairs" and "necessaries" were never construed so strictly as to allow a maritime lien where credit could be proven to have been given to the vessel for making good the damage which had been suffered during use, and at the same time to refuse to allow a maritime lien for additional necessary items in order to put the vessel in the condition in which it was wanted for future use.

Congress evidently, by the words "repairs, supplies and necessaries," intended to grant a lien for just such things as had previously been considered the proper subject-matter for maritime liens, where the vessel's credit was involved, and where she was not in her home port. But there is nothing to indicate that Congress, in substituting a general statute for the various state laws, limited, to "repairs" of injuries or defects only, the various items of construction, in the nature of and in connection with repairs, which previously were covered by the statutes of the different states. The J. E. Rumbell, supra; The Robert W. Parsons, 191 U. S. 17, 24 Sup. Ct. 8, 48 L. Ed. 73.

Some of the work done on the Harvard was evidently actual repair work, in the sense of restoring her to first class condition. Considerable of the work was evidently alteration or furnishing of accommodations, in which the previous condition of the accommodations was not satisfactory, and an actual enlargement of these accommodations was desired and necessary for her intended use. Such a matter cannot be measured by the amount of money involved alone. It was not reconstruction, as in the case of The Susquehanna, supra, nor can it be said to have been entirely a repair, in the sense of replacing injured or damaged parts. It was, however, repair in the sense in which the word has always been used, both in maritime matters (The Oceana, 244 Fed. 80, 156 C. C. A. 475; The Iris, 100 Fed. 104, 40 C. C. A. 301; Hardy et al. v. The Ruggles, Fed. Cas. No. 6,062), and in work upon land.

As was said in the Piedmont Co. Case, supra, the purpose of a maritime lien is to enable a vessel to obtain necessary help, even in a port where no ordinary credit may be had, and when the money for payment is not in the captain's hands. It is not based on unjust enrichment, as in the case of a mechanic's lien, which covers repairs and also new construction. "Repairs" always include improvements as the work goes along. In order to put the Harvard in first-class condition, and particularly in first-class condition for use in the work, as was desired by her owners, it was necessary to make repairs. Her owners desired that these repairs embody certain changes or improvements, which were

extensive in character, but which were not a reconstruction of the boat, in the sense held outside of the statute by the Circuit Court of Appeals in The Susquehanna, supra.

So long, therefore, as the matter was maritime in its nature and within the former possible subject-matter of a maritime lien, it should be held that it was within the words "repairs and necessaries," in the sense in which those words were used by Congress.

The report of the master will be confirmed, and the libelant may have a decree.