## THE ULRIK HOLM.

## THE CATAWISSA.

(Circuit Court of Appeals, First Circuit. April 10, 1924. Rehearing Denied June 10, 1924.)

Nos. 1655, 1656.

1. **Railroads ☞5½. New, vol. 6A Key-No. Series—Personal judgment against Director General, made party to libel on own motion, held proper.**

Where Director General of Railroads, prior to enactment of Transportation Act Feb. 28, 1920, § 206 (a), being Comp. St. Ann. Supp. 1923, § 10071¼cc, was made party respondent in cross-libel on his own motion, a personal judgment against him was authorized, and a decree in rem may be amended so as to be in form and substance one in personam against the Director General.

2. **Collision ☞90—Between steam tug and steamship held due to steam tug crossing steamship's bow.**

A collision between a steam tug and a steamship *held* due to the fact that the steam tug crossed the bow of the steamship and then suddenly undertook to cross back again at a time when it was inevitable that an accident would ensue.

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Libel by the Reading Company against the steamship Ulrik Holm, Marius Nielsen & Son, Inc., claimant, in which such claimant filed a cross-libel against the steam tug Catawissa, James C. Davis, Director General of Railroads, claimant. From the decree rendered in the original libel, the libelant appeals; and from decree rendered on cross-libel, the claimant appeals. Decree on original libel affirmed, and decree on cross-libel affirmed as amended.

See, also, 257 Fed. 863.

John R. Lazenby, of New York City, for appellants.

Stephen R. Jones, of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. No. 1655 is an appeal in admiralty from a decree of the District Court for Massachusetts dismissing a libel brought by the Reading Company, a Pennsylvania corporation, alleged to be the sole owner of the steam tug Catawissa, against the steamship Ulrik Holm, its tackle, apparel, furniture, engines, and boats, and against its owners and all other persons interested or intervening therein, to recover damages for a collision between the steam tug Catawissa and the steamship Ulrik Holm on the morning of September 18, 1918, and praying that process in due form issue against the steamship, her boats, engines, etc., and that all persons having or claiming any interest in said steamship may be cited to appear and answer. Marius Nielsen & Son, Inc., owner of the Holm, appeared

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

298 F.—54

as claimant and filed an answer and stipulations for costs and to the action.

No. 1656 is an appeal from a decree of the District Court for Massachusetts on a cross-libel brought by Marius Nielsen & Son, Inc., a Danish corporation, alleged to be the owner of the steamship Ulrik Holm, against the steam tug Catawissa, her boats, tackle, and furniture, and against all persons lawfully intervening or interested therein, praying that process in due form of law may issue against said steam tug Catawissa, her boats, engines, etc., and that all persons having any interest therein may be cited to appear and answer, and also for a stay of all further proceedings in the action of the Reading Company against the steamship Ulrik Holm "until security be given by said Reading Company pursuant to the rules in admiralty and the practice of this honorable court to respond in damages in this cross-libel." After the filing of the cross-libel the Reading Company filed a motion in the proceedings, setting out that it was the sole owner of the steam tug Catawissa; that prior to August 26, 1916, it had perpetually chartered said steam tug to the Philadelphia & Reading Railroad, a common carrier; and that said steam tug on the day of the collision was and still is being operated by said railroad, but subject to the direction and control of the United States Railroad Administration; and praying that Walker D. Hines, Director General of Railroads of the United States, be made party respondent, and the steam tug Catawissa dismissed from the proceeding. A similar motion was also filed by Walker D. Hines, Director General of Railroads of the United States, containing a like prayer, and a further motion that no bond or other security should be required of him as a condition precedent to the maintenance of the further prosecution of the libel of the Reading Company against the steamship Ulrick Holm, as prayed for in the cross-libel. The court denied both motions, ruling that the Catawissa, notwithstanding she had been taken over on December 28, 1917, as a part of the property of the Philadelphia & Reading Railroad Company by the United States under the federal control proclamation, was subject to arrest on the cross-libel, and that the libel should not be dismissed as to her; that the Reading Company, the original libelant, be required to give security under rule 53, on the cross-libel, as a condition of being permitted to proceed with the original libel, and denied the motions to make Mr. Hines respondent in the cross-libel. Thereupon Walker D. Hines, as Director General, appeared as claimant, entitled to the possession of the steam tug Catawissa and filed stipulations for costs and to the action, and answered.

In the cross-libel it was decreed that the libelant recover against the claimant and stipulator the sum of $23,120.91, and that:

"Unless this decree be satisfied or proceedings thereon be stayed by appeal within the time and in the manner prescribed by law and the rules and practice of this court, the stipulator for the claimant cause the engagement of its stipulation to be performed, and in default thereof execution to issue accordingly."

January 4, 1923, and prior to entering the decrees here in question, James C. Davis, then Director General of Railroads, filed a motion asking that he be substituted for said Walker D. Hines as claimant in

the cross-libel, and that he be made party respondent therein, which motion was allowed. Neither Walker D. Hines nor James C. Davis, as Director General of Railroads, was ever made a party libelant in the original libel, although they respectively appear to have been so regarded and to have acted as such.

By these appeals the appellant seeks to raise two questions: The first relates wholly to the cross-libel and concerns the validity of the decree entered thereon. The second is common to both appeals. By it the appellant questions the finding of the District Court that the tug Catawissa was solely at fault and that the steamer was without fault.

As to the first question, the appellant's contention is that, inasmuch as it appears that, on the date of the collision and at the time when the cross-libel was filed, the Catawissa was in the possession, use, and control of the United States through the Director General of Railroads, she was immune from arrest on admiralty process, and the Director General should not have been required to furnish security as a condition precedent to the further prosecution of the libel of the Reading Company against the Ulrik Holm; that the right of action of Nielsen & Son, Inc., if any, on its cross-libel, was against the Director General of Railroads in personam; that the stipulation for security, which formed the basis of the final decree in the cross-libel, was a mere substitute for the Catawissa, and the decree, being issued against the stipulation, is as erroneous as it would be had it issued against the Catawissa.

[1] Counsel for appellant apparently overlooks the fact that, prior to entering the decree here complained of, James C. Davis, as Director General of Railroads, was, on his own motion, made party respondent in the cross-libel, thereby converting it in substance into a libel in personam as well as in rem, so that the court had jurisdiction to enter a personal judgment against James C. Davis as Director General of Railroads. The objection, therefore, that the decree here in question, which runs against the stipulator, is a decree in rem rather than in personam, is highly technical, for, whether it be in rem or in personam, it results in the United States, through its Railroad Administration, being required to pay the damages determined by the decree. A further discussion of its validity is unnecessary, for the decree may be amended in the District Court, so that it shall be in form and in substance one in personam against the Director General.

[2] The collision out of which this suit arose occurred about 1:35 a. m. September 18, 1918; the Ulrik Holm at the time being on her way into Boston Harbor by way of the North Channel, and the tug Catawissa on her way out of the harbor. The Ulrik Holm carried a cargo of coal; the Catawissa was empty. As the Holm came in from the sea, she took on Capt. Nelson, a Boston Harbor pilot, about 1 a. m., who took charge of her navigation. She proceeded westerly toward Finn's Ledge Buoy, and when about half a mile from the buoy was put at half speed, having Finn's Ledge Buoy on her starboard bow. At this time the green light of the tug Catawissa was seen about 2½ points off the port bow of the Ulrik Holm, some two miles away. The Holm then blew one passing whistle, to indicate that the

vessels should pass port to port. The Catawissa did not answer this signal, and the Holm, when off Finn's Ledge Buoy, gave a second signal of one blast, which the Catawissa answered with one blast, agreeing to pass port to port. When abreast of Finn's Ledge Buoy the Ulrik Holm reduced her speed to slow. Some 1,200 feet inside of Finn's Ledge Buoy, and on the northwesterly edge of the North Channel, the government had stationed a small tugboat, called a guard boat, which vessels going in and out by that channel had to speak and obtain permission to proceed; and the Holm, which had to speak the guard boat, on leaving Finn's Ledge Buoy steered directly for the guard boat and continued on that course about half way, when she starboarded her wheel about a quarter of a point, so as to pass the guard boat on her starboard side.

The Catawissa, on leaving what is termed the net on the southeast side of the channel, which was located about a mile southwesterly of the guard boat, proceeded directly for the guard boat, with Finn's Ledge Buoy about a half a point on the tug's starboard bow. Immediately after leaving the net, the Catawissa saw the red light of the Holm about a point on her starboard bow, and heard the steamer's second passing signal, which she at once answered with one blast, and then kept on down to the guard boat at half speed, or about 5 or 6 miles an hour. When the Catawissa was within 500 or 600 feet of the guard boat she stopped her engines with a view to hailing the guard boat, having the red light of the steamer about a half a point on her starboard bow, but she continued to forge ahead by force of the tide and her momentum. After forging ahead for about a minute with her engines stopped, both of the steamer's lights were seen directly ahead. The Catawissa then blew a signal of one blast and immediately started at full speed ahead under a hard aport helm. Immediately on hearing that blast the Holm blew a danger signal and reversed her engines full speed astern. The Catawissa then blew a danger signal and reversed her engines, but the boats collided; the bow of the Holm striking the stem of the Catawissa at about a right angle.

The appellant contends that the accident was due to the fault of the Holm; that, instead of keeping her agreement to pass port to port, she swung southwesterly, cutting off the Catawissa and causing the accident.

But the District Court found that the Holm did not change her course in any substantial degree; that the accident was due to the fact that the Catawissa had crossed the bow of the Holm and then suddenly undertook to cross back again at a time when it was practically inevitable that an accident would ensue.

We do not find it necessary to restate the evidence bearing upon the disputed question. We have examined it, and are satisfied that, the conclusion reached by the District Court was right.

In No. 1655 the decree of the District Court is affirmed, with costs to the appellee.

In No. 1656 the appellee has leave to apply for an amendment of the decree as above suggested, and, as amended, it is affirmed, with costs to the appellee.

On Petition for Rehearing.

PER CURIAM. On November 20, 1919, Walker D. Hines, then Director General of Railroads of the United States, filed stipulations for costs and to the action and an answer to the cross-libel and complaint (No. 1656) of Marius Nielsen & Son, Inc., in which he expressly submitted himself to the jurisdiction of the court and made a full answer to the cross-libel on its merits. At the same time he filed 'a claim stating the ownership of the Catawissa and his right as Director General of Railroads at the time of the collision and thereafter to its possession. This was some two months prior to the enactment of section 206 (a) of the Transportation Act of February 28, 1920 (Comp. St. Ann. Supp. 1923, § 10071¼cc), limiting the time within which an action could be brought against the Director General to two years from the date of the passage of said act. By then submitting himself to the jurisdiction of the court and being heard upon the merits, he acquiesced in the court's jurisdiction over his person as well as over the thing belonging to him, though not properly served with process. "It would certainly be sticking in the bark to compel a libelant in a suit in rem to begin a new suit in personam, notwithstanding that the claimant consented to have his rights determined in the suit in rem." The Susquehanna (C. C. A.) 267 Fed. 811, 813. See, also, The Merrimac (D. C.) 242 Fed. 572, 574.

In the Susquehanna Case the libelants were held entitled "to a decree against the claimant of the Susquehanna, its sureties being discharged." That was the legal effect of our order in No. 1656, directing that the decree against the stipulators be amended to one against the claimant.

At the time the claimant filed the stipulations and answer, in which he expressly submitted himself to the jurisdiction of the court, he had authority so to do, for section 206 (a) of the Act of February 28, 1920, was not then in existence.

The petition for rehearing is denied.