## CROWNINSHIELD SHIPBUILDING CO. v. UNITED STATES.

### No. 2558.

Circuit Court of Appeals, First Circuit.
Jan. 5, 1932.

Daniel T. Hagan, of Providence, R. I. (John H. Di Stefano, of Providence, R. I., and Louis Halle, of New York City, on the brief), for appellant.

Charles H. Eden, Asst. U. S. Atty., of Providence, R. I. (Henry M. Boss, Jr., U. S. Atty., of Providence, R. I., on the brief), for the United States.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge.

This is an intervening petition filed by the Crowninshield Shipbuilding Company, a Rhode Island corporation, in a libel for the forfeiture of the American gas screw yacht Mardelle. Forfeiture was sought by the United States under provisions of title 2, § 26, of the National Prohibition Act (USCA title 27, § 40). At the trial before the District Court, the owner or owners did not appear, and judgment of forfeiture was entered by default.

The appellant, intervener, seeks to establish a lien upon the proceeds of the sale of the yacht for the sum of $7,998.82. The claim was denied by the District Court in a decree filed December 27, 1930, from which an appeal was taken to this court.

The facts presented by the very brief record are that, during the early part of the year 1930, the Crowninshield Shipbuilding Company constructed the yacht Mardelle, completing and making delivery of her the latter part of July, 1930. About four weeks later, namely, on the 26th of August, 1930, this boat was seized while engaged in violation of the National Prohibition Act.

The intervener asserts that it has a lien for alterations, material, and repairs, in the amount of $7,998.82.

The original cost of the boat was $9,900. Thomas McNerney, president and treasurer of the corporation, testified that the material and labor for which claim is presented was furnished during the early part of August, 1930. It does not appear when the boat was launched, but it does appear that it was completed and delivered the latter part of July, and that the original cost of construction was paid when the job was finished. He testified that all of the work for alterations represented in intervener's bill was performed subsequent to August; that is, between August 1, 1930, and the time of the seizure, which was August 26, 1930. He also testified that the boat was finished the latter part of July, and "the owner was not quite satisfied with it; he made the changes, I didn't." In another place, in speaking of hatches on the boat, he testified as follows: "O, she run for I don't know how long, she run for a couple of months without hatches." On redirect examination he testified that the work was started July 22, 1930.

The bill presented, covering fourteen pages of the record and including 2,340 hours work, equivalent to 292 days of eight hours each, bears date of July 22, 1930. This is followed by another bill dated August 25, 1930, the day prior to the seizure.

It is asserted that a new boat launched at the end of July, 1930, required alterations and repairs within the following four weeks in an amount equal to more than 75 per cent. of the original cost of construction.

The testimony is so conflicting and the bill rendered so improbable that the trial judge says: "Mr. McNerney in his testimony claimed that he was paid in full for the original construction of the boat. I am satisfied that either that was not so and he is now trying to collect it in this proceeding or, if it was so, that there is some cooperation between the claimant and the owners of the boat to now, by an indirect means, recover back substantially the value of the boat which has been forfeited and for which no direct claims by the owners could be maintained. So confident am I that the claim presented was accompanied by false testimony I believe the claim should be dismissed in its entirety."

While we are not bound by the findings of the trial court on questions of fact, yet the decision of the trial court based on conflicting testimony or the credibility of witnesses examined before him is entitled to great respect, and will not be lightly reversed on appeal, unless there is a decided preponderance of evidence against it or a mistake is clearly shown. The Kalfarli (C. C. A.) 277 F. 391.

Section 26 of title 2 of the National Prohibition Act provides that, if a vehicle is seized when used in transporting intoxicating liquors, the court, "unless good cause to the contrary" is shown by the owner, shall order a sale of the vehicle and pay liens established as bona fide and created without the lienor having any notice it was being or was to be used for the illegal transportation of liquor.

The intervener in this case has the burden of establishing a lien upon the res. A lien may be created either by operation of the statutes or by agreement of the parties. The intervener does not contend for the latter, but does claim a maritime lien under the Merchant Marine Act of 1920, § 30, subsec. P, title 46, USCA § 971 (41 Stat. 1005), which provides as follows:

"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

In view of the finding of the trial judge, a finding with which, from the state of the evidence, we find ourselves in accord, that all that portion of intervener's bill covering thirteen pages of the record amounting to $7,219.83 was either part of the original construction or an effort to recover back substantially the value of the boat, it is apparent it has not sustained the burden of proof, and no maritime lien can be allowed. Edwards v. Elliott, 21 Wall. 532, 22 L. Ed. 487; The Mountaineer (C. C. A.) 286 F. 913; The Jack-O-Lantern, 258 U. S. 96, 42 S. Ct. 243, 66 L. Ed. 482; The Susquehanna (C. C. A.) 267 F. 811.

Failing to establish a maritime lien, the intervener asserts that it is entitled to a lien under chapter 255, § 14, of the General Laws of Massachusetts, which provides as follows:

"Section 14. If by virtue of a contract, express or implied, with the owners of a vessel or with the agents, contractors or subcontractors of such owners, or with any of them, or with a person who has been employed to construct, repair or launch a vessel or to assist therein, money is due for labor performed, materials used or labor and materials furnished in the construction, launch-

ing or repairs of, or in the construction of the launching ways for, or for provisions, stores or other articles furnished for or on account of such vessel in the commonwealth, the person to whom such money is due shall have a lien upon the vessel, her tackle, apparel and furniture to secure the payment of such debt, and such lien shall be preferred to all others on such vessel, except that for mariners' wages, and shall continue until the debt is satisfied."

It is admitted that section 14, supra, is sufficiently broad to include the claim of an intervener for original construction work, but section 15 of the same chapter provides: "Such lien shall be dissolved unless the person claiming it within thirty days after the vessel departs from the port at which she was when the debt was contracted, files in the office of the clerk of the town where the vessel was at such time, a statement, subscribed and sworn to by him or by a person in his behalf, giving a true account of the demand claimed to be due to him, with all just credits, the name of the person with whom the contract was made, the name of the owner of the vessel, if known, and the name of the vessel or a description thereof sufficient for identification. The statement shall be recorded by such clerk in a book kept by him for that purpose, and the fees therefor shall be the same as for recording mortgages."

There is nothing in the record to show that the intervener has taken any steps to preserve a lien under section 15, supra. Petitioner's claim of a lien covering all items to the account dated August 25, 1930, amounting to $7,219.83, is disallowed. The Glide, 167 U. S. 606, 623, 17 S. Ct. 930, 42 L. Ed. 296; The Atlantic City (C. C. A.) 220 F. 281, Ann. Cas. 1915D, 50.

With reference to the balance of intervener's bill amounting to $778.99, the trial judge finds as follows:

"I am satisfied that if any work was in fact done upon the boat by the claimant between the date of its delivery at the end of July and its seizure a few days later, it is represented by the items on the sixth sheet of the exhibit dated August 25, and indicating materials and work furnished between August 5 and August 25, and totalling instead of nearly $8,000, only $778.99. * * * So confident am I that the claim presented was accompanied by false testimony, I believe the claim should be dismissed in its entirety. This court does not feel called upon to select a small number of items from the total presented, in respect to which a right of lien might plausi-

bly exist, when it is apparent that the claim as a whole is not supported by credible testimony."

The evidence is conspicuous for the absence of the name of the owner of the yacht or any other person in authority found on it when it was seized. There is testimony from McNerney, president and treasurer of the claimant corporation, that, when the boat was finished, the owner was not quite satisfied with it, and he made the changes.

Persons presumed to have authority to charge a vessel with repairs are the owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. USCA, title 46, § 972.

With the exception of the allegation in the libel that the vessel was registered to Howard Allen Winslow of Brooklyn, N. Y., a sole owner, and Eugene Kenneth Chapman, master, there is nothing in the record showing who was the true owner.

Allegations in the libel are not testimony and do not furnish a foundation for a finding of fact, unless admitted in the answer. There appears to be no such admission. McNerney does not say whether he contracted with the owner directly for repairs or whether they were ordered by some other person in his behalf. None of the exhibits purporting to be copies from the intervener's books show with whom the contract was made or the name of the owner or master. Its bill filed in court was charged to "Yacht Mardelle and owner Fall River, Mass.," but the books of accounts were not brought into court for the inspection of the trial judge.

There is an entire and unexplained absence of any written data, letters, or otherwise, requesting changes or repairs to be made on the boat. Certainly, if the transaction was open and above board, we would expect some written evidence of authority in a transaction involving the sum of $7,998.82. Most business men would have at least obtained an estimate of the cost of the changes or repairs and had in their files correspondence with reference thereto. McNerney's testimony is so discredited by the trial judge, and the record is so lacking in material facts necessary to convince the trial court of the validity of the petitioner's claim, that we are not surprised that the District Court found that portions of the testimony "represented a poor attempt to make something appear what it is not."

A review of the entire case, testimony and exhibits, convinces us that material facts were

withheld, and that there was co-operation between the intervener and another person or persons unknown to recover back by indirect methods the value of the boat, and that intervener knew the purpose for which the boat was being constructed and the business in which she was engaged.

The testimony is so unreliable that we feel impelled to disallow the entire claim of the petitioner, as did the District Judge who heard the evidence. The Penn (C. C. A.) 279 F. 212.

The decree of the District Court is affirmed.