**UNITED STATES v. MARTIN et al. (VIMA-LERT CO., Limited, et al., Interveners).**

No. 32849.

District Court, E. D. New York.

Dec. 16, 1932.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Alfred C. McKenzie, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Newman, Hauser & Teitler, of New York City (Samuel L. Teitler, of New York City, of counsel), for Vimalert Co., Limited.

Crowell & Rouse, of New York City (E. Curtis Rouse, of New York City, of counsel), for Wheeler Shipyard, Inc.

GALSTON, District Judge.

The matter before the court is the consideration of the petitions of the Wheeler Shipyard, Inc., and the Vimalert Company, Ltd., to intervene and establish their respective liens against the motorboat Tally-Ho in the above entitled action.

One opinion will suffice.

The Tally-Ho was seized on August 12, 1932, within the jurisdiction of this court, while laden with a cargo of intoxicating liquors. The defendants, constituting the crew of the vessel, were indicted and charged with transportation and possession of the intoxicating liquors. To this indictment they pleaded guilty. Upon the entry of this plea, and sentence having been imposed, the government moved for the forfeiture of the vessel. This motion was granted, and an order was entered thereon on October 26, 1932, directing the United States marshal for the eastern district of New York to take the vessel into his possession and to publish a notice di-

recting all lienors and claimants to file their claims and liens.

As to the petition of the Wheeler Shipyard, Inc.: Beginning on or about March 13, 1931, and continuing until on or about November 10, 1931, this company furnished materials and supplies and performed certain work, labor, and services upon the vessel in the shipyard which aggregated the sum of $3,102.60. No payments were made until November 10, 1931, when $800 was paid on account, and on January 30, 1932, $1,000 was paid.

The sole question involved is whether the intervener falls within the provision of title 27, U. S. Code, § 40 (27 USCA § 40), as possessing a bona fide lien "created without the lienor having any notice that the carrying vehicle was being used or was to be used for illegal transportation of liquor."

Eugene M. Wheeler, the secretary of the petitioner, testified that one Johnny Harrison, whom he had never seen before and did not know, represented himself as the captain of the boat. This man called on him in the yard before the boat arrived at the dry dock. Harrison told him to get the boat at a freight station somewhere in Jersey City, where the boat was on a freight car. Harrison did not tell him the name of the owner, nor did the witness inquire who the owner was, nor anything about the owner. Asked what arrangements he had entered into with Harrison, the witness said: "I said when the boat came in we would look it over and see what repairs he wanted done, and we would go ahead and do them."

No estimate of the probable cost was made or given to Harrison, no written contract was entered into in respect to these repairs, and no writing made of any kind whatsoever.

Leslie L. Wheeler, a brother of the secretary of the company, said:

"The first I knew the boat was on the float. I did not have anything to do with bringing it there. My brother told me to go down and talk to the captain and see what work he wanted done; so he asked me to go out for a ride with him on the boat, so I did. The boat was a great big mahogany runabout with two big engines. * * *

"It had a very short forward deck, with a little cover over the engine, and it was open forward and aft. It was a very rough day when we went on the ride and the fellow said, 'What do you think of the boat,' when we got back, and I said it was terrible. He said, 'What can you do to it?' I said, 'We will do

whatever work is necessary to make it stand up in salt water.' It was a fresh water boat."

"Q. Did he tell you then for what purpose he wanted the boat? A. No."

"Q. And he laid out the work to be done? A. Yes."

"Q. What was that work? A. We put heavy stringers inside to hold the boat together, and changed the iron shafts to bronze, and changed any iron fittings in the boat to bronze so that it would stand up in salt water. The bow of the boat was very low and any time a solid wave hit it it went down, so we raised the bow up and we raised the engine room inside so that a man could go in and work on the engines."

The absence of any show of interest on the part of the Wheelers as to the purpose for which the boat was to be used is significant, particularly in view of the fact that its character was to be changed from that of a fresh water boat to one operable in salt water.

Significant also is the following testimony of this witness:

"Q. Did you ever ask Harrison who the owner of that vessel was? A. No. I had no occasion to ask him that."

"Q. Did you ever ask him that? A. I asked him as little as necessary. I would not be worrying about that."

Nor can it be ignored that no payment was received for the repairs until months after they had been completed. That would not be of importance if the transactions had been of a businesslike nature, but not as here, performed at the request of a man then unknown to the shipyard, to a vessel not yet arrived, and the owner of which was unknown and remained unknown. The boat was first repaired and delivered to Harrison on April 11, 1931, at which time there was due the sum of $1,910.23. On July 14, 1931, the boat having come back, an additional charge for labor and materials was incurred of $468.33; on July 24, 1931, $273.04; and finally on October 24, 1931, an additional charge of $428.10.

One can very well understand how an oral contract such as that alleged herein might have been made by a shipyard with a known and responsible person or one having had prior dealings with it. And it is no explanation to assert that the repairs were extended on the credit of the vessel itself, for the absence of any writing, undertaking, or any memorandum cannot lightly be passed over. There is no showing either by the petitioner

as to where the bills for repairs were to be sent or to whom.

As was said in Crowninshield Shipbuilding Co. v. United States (C. C. A.) 54 F.(2d) 879, 881:

"With the exception of the allegation in the libel that the vessel was registered to Howard Allen Winslow of Brooklyn, N. Y., a sole owner, and Eugene Kenneth Chapman, master, there is nothing in the record showing who was the true owner. * * *

"There is an entire and unexplained absence of any written data, letters, or otherwise, requesting changes or repairs to be made on the boat. Certainly, if the transaction was open and above board, we would expect some written evidence of authority in a transaction involving the sum of $7,998.82. Most business men would have at least obtained an estimate of the cost of the changes or repairs and had in their files correspondence with reference thereto. McNerney's testimony is so discredited by the trial judge, and the record is so lacking in material facts necessary to convince the trial court of the validity of the petitioner's claim, that we are not surprised that the District Court found that portions of the testimony 'represented a poor attempt to make something appear what it is not.'"

I conclude that the petitioner has failed to sustain the burden imposed upon it by section 40 of title 27, U. S. C. (27 USCA § 40); and accordingly the petition may be dismissed.

As to the claim of the Vimalert Company, Limited, this company is in the business of selling marine tank engines and also does overhauling of engines. In February, 1932, some one came in to the plant of the petitioner and said that he had one of its engines in the Tally-Ho and he wanted to have that engine and another of different manufacture completely overhauled. Thereafter these engines were taken to the shop of the Vimalert Company and the required work was performed, the engines delivered to the Tally-Ho and installed thereon. The reasonable value thereof was $2,211.50.

Again we find here no written contract, no estimate, no inquiry as to the owner of the boat, no record even of the name of the person who came in and ordered the work done. Whereas the circumstances in the matter of this claim are not quite so suspicious as those recited in the consideration of the claim of the Wheeler Shipyard, nevertheless it is difficult to understand why a substantial credit of the kind involved herein should have been extended without some written memorandum of the terms on which the labor was to be supplied. Alleged innocence of the use to which the vessel was to be put does not comport with the apparently studied effort on the part of the intervener to know nothing of the ownership of the vessel, of the person who ordered the work performed, and the absence of any written memorandum in regard thereto. See Crowninshield Shipbuilding Co. v. United States (C. C. A.) 54 F.(2d) 879.

The petitions will be dismissed.

Settle orders on notice.